KING, C.J.,
 

 for the Court.
 

 ¶ 1. Frederick Miller, Jr., was convicted accessory after the fact to murder and sentenced to five years in the custody of the Mississippi Department of Corrections (MDOC), with one year and six months to serve and three years and six months of post-release supervision. Aggrieved, Miller appeals, raising the following issues:
 

 I. Whether the youth court had exclusive jurisdiction over his case;
 

 II. Whether the statements that he made to the police were admissible;
 

 III. Whether the circuit court erred by denying his motion for a judgment notwithstanding the verdict;
 

 IV. Whether the verdict is against the overwhelming weight of the evidence;
 

 V. Whether the circuit court erred by failing to instruct the jury as to the elements of murder;
 

 VI. Whether the indictment was fatally defective;
 

 VII. Whether he received ineffective assistance of counsel; and
 

 VIII. Whether there was cumulative error that warrants reversal.
 

 Finding no error, we affirm Miller’s conviction and sentence.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On February 7, 2007, Miller was indicted as an accessory after the fact to murder. The indictment alleged that on November 1, 2006, Miller, who was seventeen years old at the time, knew that Jerry Montez Winters had committed murder and helped Winters locate the murder weapon.
 

 1. The Police Investigation
 

 ¶ 3. Investigator Martin Roby of the At-tala County Sheriffs Department testified that on November 1, 2006, the sheriffs department was called to a location on Highway 19 in Kosciusko, Mississippi. When the police officers arrived, they found a sport utility vehicle (SUV) on the side of the road; the vehicle had crashed into a tree. The body of Chad Jackson, who had a gunshot wound to his right temple, lay in the driver’s seat of the SUV. Kay Robertson, the Attala County coroner, testified that Jackson died as a result of the gunshot wound.
 

 ¶ 4. Investigator Roby testified that Jackson’s pockets were turned inside out, and his wallet was missing. The police officers found a .38 revolver on the ground outside of the SUV. The police officers also found a jacket and a shirt located about a mile and a half away from the scene of the crime; it was later determined that the clothing belonged to Winters. Investigator Roby interviewed Jackson’s family and friends and reviewed Jackson’s cell phone records. While reviewing the cell phone records, Investigator Roby saw that a phone call was made to Jackson’s cell phone from Miller’s cell phone at 12:30 a.m. on the day in question. Investigator Roby picked up Miller for questioning and read him his
 
 Miranda,
 
 rights. Miller signed a waiver of his
 
 Miranda
 
 rights and submitted to an interview.
 

 2. Miller’s Interview and Trial Testimony
 

 ¶ 5. An audiotape of the interview was played for the jury. During the interview,
 
 *902
 
 Investigator Roby questioned Miller about what transpired on the day in question. Miller said that Winters, his cousin, came to his home and asked if he could use Miller’s bicycle and cell phone. Miller agreed. Miller said that he overheard Winters make a phone call to an unidentified man in which he discussed drug activity. Winters then left Miller’s home, but he later returned.
 

 ¶ 6. During Miller’s interview at the sheriffs department, Investigator Roby asked what Winters was wearing before he left and what Winters was wearing when he returned to Miller’s home. Miller said that Winters was wearing a dark-colored, plastic jacket and a white shirt when he left. However, Winters was not wearing the jacket and white shirt when he returned.
 

 ¶ 7. When Winters returned to Miller’s home, he asked Miller and Josh Cox, a friend, to meet him at his girlfriend’s home. Miller stated that Winters “had [a] glow in his eyes” and that he looked scared and nervous, as if he had seen a ghost. Miller said, “I already knew he had done it.” However, Miller never explained what “it” was. He also stated that Winters did not tell him that he had done anything. Miller said that Winters had lost his cell phone, claiming that he had dropped it. Upset because Winters had lost his cell phone, Miller went back inside of his home. By the time Miller went back outside, Winters, Cox, and Akeem Miller (Ak-eem), Miller’s younger brother, were gone.
 

 ¶ 8. Miller said that he went to the home of Winters’s girlfriend to look for Akeem. After Miller arrived, Winters asked him if he wanted to go for a ride, and Miller agreed. Miller said that he did not know where they were going, and no one told him that anything had happened.
 

 ¶ 9. Miller said that Jeremy Stewart drove him and Winters to a location on Highway 19. Miller said that, at the location, he saw an SUV in the woods with its lights on. Upon getting out of the car and moving closer to the SUV, Miller saw a dead body inside of the vehicle. Miller said that he returned to Stewart’s car after seeing the dead body. Miller testified that he saw Winters looking for something around the SUV. Miller said that, at the time, he did not know what Winters was looking for. He later learned that Winters was looking for a gun. Miller claimed that he did not help Winters look for the gun. The boys were at the location for two or three minutes. Winters did not find what he was looking for, and they left the area. Miller said that he did not ask Winters what had happened because he was scared.
 

 ¶ 10. Miller, Winters, and Stewart returned to the home of Winters’s girlfriend. Miller said that Winters and Stewart were burning something in the trash, but he could not identify the objects. Miller said that he simply got Akeem and returned to his own home.
 

 ¶ 11. During the interview with Investigator Roby, Miller said that he talked to Winters the day after the incident. Miller claimed that he did not ask Winters what transpired the previous night. Miller said that Winters simply told him to “keep it on the down low,” which meant that Winters did not want Miller to tell anyone what he had seen.
 

 ¶ 12. During his interview with Investigator Roby and during the trial, Miller was asked what he meant when he said, “I already knew ¡Winters] had done it.” Miller explained that, a few days before the incident, Winters told him about a man who was “trying to get over on him” regarding some money. Winters told Miller that he was going to “handle” the man. Miller attempted to talk Winters out of it, but Winters would not listen to him. Mil
 
 *903
 
 ler did not know if Jackson was the same man allegedly swindling Winters. Miller thought that Winters only wanted to hurt the man, perhaps by fighting the man. Miller said that he had no reason to believe that Winters would kill anyone. Miller maintained that he was unaware that a crime had occurred until he arrived at the scene of the incident on Highway 19.
 

 3.Stewart’s Testimony
 

 ¶ 13. Stewart was also facing criminal charges for allegedly helping Winters evade the law. Stewart testified that Winters claimed that he was involved in a car wreck. Winters asked Stewart to drive him to the wreck so he could find a cell phone. Stewart drove Winters, Cox, and Akeem to the location of the alleged wreck on Highway 19. Stewart saw a vehicle facing the woods when they arrived at the location. The boys retrieved the cell phone, left the location, and returned to the home of Winters’s girlfriend.
 

 ¶ 14. Shortly thereafter, Miller stopped by the girlfriend’s home. Winters asked Stewart to take him back to Highway 19, and Winters asked Miller to join them. Stewart obliged. Stewart testified that Winters and Miller took chicken plant gloves with them to the scene of the accident, and Miller helped Winters search for something around the SUV. However, Stewart admitted that he failed to mention this when he was questioned by the police.
 

 ¶ 15. Stewart testified that Winters did not tell any of them what had happened until after it was all over. At that time, Stewart learned that Winters had shot Jackson inside the SUV on Highway 19.
 

 ¶ 16. A few days after the incident, Winters asked Stewart to drive him to the bus station in Jackson, Mississippi. Stewart said that he took Winters to the bus station because he was scared, and he was already headed to Jackson.
 

 4. Akeem’s Testimony
 

 ¶ 17. Akeem was also at home with Miller when Winters stopped by on the night of the incident. Akeem testified that Winters gave him a cell phone before he left, and Winters asked Akeem to answer the phone when he called. Akeem later received a call on that cell phone. When Akeem answered the phone, he heard Winters pretending as if he were arguing with a girlfriend. Then, Akeem heard a gunshot, and the phone went dead.
 

 ¶ 18. Akeem testified that he went to Highway 19 with Stewart, Winters, and Cox to look for the cell phone that Winters had dropped. Akeem found the cell phone in the grass. Afterwards, the boys left the location and returned to Winters’s girlfriend’s home.
 

 ¶ 19. Akeem was at the girlfriend’s home when Miller arrived. Akeem testified that Miller did not know what was going on when he agreed to ride with Winters to Highway 19. Akeem also testified that Winters and Cox were the only people who had gloves, and Miller did not have gloves. Akeem did not go on the second trip to Highway 19. After the boys arrived back from the second trip to Highway 19, Akeem said that he saw Winters burning “the man’s” wallet and other belongings. Investigator Roby verified that some of Jackson’s belongings were found burned in a trash can behind Winters’s girlfriend’s home.
 

 5. Verdict
 

 ¶ 20. After the State’s case-in-chief, the defense moved for a directed verdict. The circuit court judge stated that the State’s case was extremely weak. However, the circuit court judge stated that, after viewing the evidence in the light most favorable to the State, he found that there was
 
 *904
 
 sufficient evidence to support the State’s case.
 

 ¶ 21. On March 17, 2008, an Attala County jury found Miller guilty of the crime, and he was sentenced to five years in the custody of the MDOC, with one year and six months to serve and three years and six months of post-release supervision. Thereafter, Miller filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. The circuit court denied the motion. Aggrieved, Miller timely filed his notice of appeal.
 

 ANALYSIS
 

 1. Youth Court Jurisdiction
 

 ¶ 22. Questions of law are reviewed under a de novo standard of review.
 
 In re D.S.,
 
 943 So.2d 1280, 1282(¶ 7) (Miss.2006).
 

 ¶ 23. Miller argues that he was improperly tried in the circuit court and that the youth court had exclusive jurisdiction over his case. The Youth Court Law provides, in pertinent part, that:
 

 (1) The youth court shall have exclusive original jurisdiction in all proceedings concerning a delinquent child ... except in the following circumstances:
 

 [[Image here]]
 

 (2) Jurisdiction of the child in the cause shall attach at the time of the offense and shall continue thereafter for that offense until the child’s twentieth birthday, unless sooner terminated by order of the youth court. The youth court shall not have jurisdiction over offenses committed by a child on or after his eighteenth birthday, or over offenses committed by a child on or after his seventeenth birthday where such offenses would be a felony if committed by an adult.
 

 Miss.Code Ann. § 43-21-151 (Rev.2004). Thus, “[t]he circuit court ... has jurisdiction over juveniles who commit felonies on or after them seventeenth birthday.”
 
 Ward v. State,
 
 914 So.2d 332, 334-35(¶ 5) (Miss.Ct.App.2005).
 

 ¶ 24. The record shows that Miller was born on October 13, 1989. Miller’s offense was committed on November 1, 2006. At the time of the offense, Miller was seventeen years old. Miller was charged as an accessory after the fact to murder, which is a felony offense “within the exclusive jurisdiction of the circuit court.”
 
 Moody v. State,
 
 838 So.2d 324, 333(¶ 33) (Miss.Ct.App.2002) (finding that the Mississippi Youth Court Law was inapplicable where the juvenile defendant was charged with one count of murder in the commission of a felony and one count
 
 of
 
 accessory after the fact of murder in the commission of a felony). Because Miller was seventeen years old at the time the alleged felony offense was committed, jurisdiction was proper in the circuit court. This claim of error is without merit.
 

 2. Admissibility of Statements
 

 ¶ 25. Miller argues that the statements he made to the police were inadmissible because the police failed to take his statements in compliance with the requirements of the Youth Court Law. Specifically, Miller takes issue with the fact that his parents were not notified and were not present during questioning. There was no objection made before the circuit court; thus, Miller proceeds under the plain-error doctrine.
 
 See Moore v. State,
 
 996 So.2d 756, 761(¶ 14) (Miss.2008).
 

 ¶ 26. The Youth Court Law provides that:
 

 Unless the child is immediately released, the person taking the child into custody shall immediately notify the judge or his designee. A person taking a child into
 
 *905
 
 custody shall also make continuing reasonable efforts to notify the child’s parent, guardian or custodian and invite the parent, guardian or custodian to be present during questioning.
 

 Miss.Code Ann. § 43-21-303(3) (Rev.2004). As previously stated, the youth court did not have jurisdiction over Miller’s case. “Since the Youth Court Act did not apply, parental notification was unnecessary.”
 
 See Cauthen v. Booker,
 
 769 So.2d 227, 229(¶ 6) (Miss.Ct.App.2000) (holding that the Youth Court Law did not apply because the defendant’s actions fell outside of the scope of the youth court’s jurisdiction). The record clearly shows that Miller gave statements to the police knowingly and voluntarily. This issue is without merit.
 

 3. JNOV
 

 ¶ 27. Miller argues that the circuit court erred by denying his motion for a JNOV because the State failed to prove essential elements of the crime of accessory after the fact. Specifically, Miller contends that: (1) the State failed to prove the nature of the killing of Jackson; (2) the State failed to prove that Miller knew that Winters had committed a felony; (3) the State failed to prove that Miller did anything to assist Winters’s attempt to evade the law; and (4) the State failed to prove that Miller intended to help Winters avoid arrest or trial.
 

 ¶ 28. A motion for a JNOV “challenges the legal sufficiency of the evidence presented at trial.”
 
 Williams v. State,
 
 923 So.2d 990, 993(¶ 13) (Miss.2006). When reviewing the grant or denial of a motion for a JNOV, this Court reviews the evidence presented at trial in the light most favorable to the State, taking all of the evidence consistent with the defendant’s guilt as true.
 
 Id.
 
 at 993-94 (citing
 
 McClain v. State,
 
 625 So.2d 774, 778 (Miss.1993)). On appeal, the circuit court’s ruling on the motion for a JNOV will not be disturbed unless, “with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair[-]minded jurors could only find the accused not guilty.”
 
 Conner v. State,
 
 971 So.2d 630, 636(¶ 16) (Miss.Ct.App.2007) (quoting
 
 Boose v. State,
 
 851 So.2d 391, 394(¶ 13) (Miss.Ct.App.2003)).
 

 ¶ 29. Miller was charged as an accessory after the fact, which has the following elements that must be established:
 

 (1) a completed felony has been committed; (2) the accused concealed, received, relieved, aided, or assisted a felon, knowing that such person had committed a felony; and (3) such assistance or aid was rendered with the intent to enable such felon to escape or avoid arrest, trial, conviction, or punishment after the commission of the felony.
 

 Dampier v. State,
 
 973 So.2d 221, 231(¶ 28) (Miss.2008) (quoting
 
 Byrom v. State,
 
 863 So.2d 836, 874-75(¶ 132) (Miss.2003)).
 

 ¶ 30. Stewart is the only witness who testified that Miller helped Winters look for the murder weapon. Miller argues that Stewart’s testimony was not credible because Stewart actually assisted Winters in his attempt to evade the law. However, the credibility of a witness is a question for the jury to decide.
 
 Williams,
 
 923 So.2d at 995(¶ 19) (citing
 
 Pearson v. State,
 
 428 So.2d 1361, 1363 (Miss.1983)). Based on the verdict, the jury obviously determined that Stewart was a credible witness.
 

 ¶ 31. There is no direct testimony that Miller knew that Winters killed Jackson. However, upon a review of the record, we find that the evidence presented at trial was sufficient to allow a jury to conclude that: (1) Winters murdered Jackson; (2) Miller knew that Winters had committed the murder; and (3) Miller knowingly as
 
 *906
 
 sisted Winters in his attempt to evade the law. There is nothing in the record that would lead this Court to question the jury’s judgment.
 

 ¶ 32. Taking the evidence presented at trial in the light most favorable to the State, we find that the evidence was legally sufficient to support Miller’s conviction. This issue is without merit.
 

 4. Weight of the Evidence
 

 ¶ 33. Miller argues that the circuit court erred by denying his motion for a new trial because the verdict is against the overwhelming weight of the evidence. Specifically, Miller contends that Stewart’s testimony was conflicting, self-serving, and unworthy of belief. Miller argues that Akeem’s testimony shows that he had no knowledge of the murder, and he did not aid Winters in his attempt to evade the law. Also, Miller argues that Investigator Roby’s testimony shows that Miller did not have any knowledge of the murder, and he did not assist Winters in his attempt to evade the law.
 

 ¶ 34. The denial of a motion for a new trial is reviewed under an abuse of discretion standard.
 
 See Johnson v. State,
 
 997 So.2d 256, 261(¶ 14) (Miss.Ct.App.2008). A motion for a new trial challenges the weight of the evidence.
 
 Ivy v. City of Louisville,
 
 976 So.2d 951, 952(¶ 7) (Miss.Ct.App.2008). This Court will not disturb the circuit court’s ruling on a motion for a new trial unless “[the verdict] is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Id.
 
 (quoting
 
 Bush v. State,
 
 895 So.2d 836, 844(¶ 18) (Miss.2005)).
 

 ¶ 35. As previously discussed, Stewart’s testimony was the only direct evidence that Miller assisted Winters in his attempt to evade the law. The State presented sufficient credible evidence from which a jury could reasonably conclude that: (1) Winters killed Jackson; (2) Miller knew that Winters had killed Jackson; and (3) Miller intended to assist Winters in his attempt to evade the law. Considering the evidence and the testimony given during the trial in the light most favorable to the verdict, we do not find that the verdict was against the overwhelming weight of the evidence or that the verdict resulted in an unconscionable injustice. Therefore, the circuit court did not err by denying Miller’s motion for a new trial. This issue is without merit.
 

 5. Jury Instruction
 

 ¶ 36. Miller argues that the circuit court erred by failing to instruct the jury as to the elements of murder. Miller maintains that the instruction was necessary because, although there was evidence of a killing, this did not necessarily lead to the conclusion that there was a murder. Miller suggests that the jury could have found that Winters committed a justifiable homicide. However, Miller’s trial counsel failed to make such an objection during the trial. “[I]f the offended party fails to object to a jury instruction at the trial, the issue is barred on appeal.”
 
 Howell v. State,
 
 800 So.2d 556, 558(¶ 5) (Miss.Ct.App.2001) (citing
 
 Walker v. State,
 
 729 So.2d 197, 202 (Miss.1998)). Thus, this issue is procedurally barred from review. Despite this procedural bar, we also find no merit to Miller’s claim.
 

 ¶ 37. On appeal, when reviewing a challenge to jury instructions, the jury instructions given should be viewed as a whole.
 
 Dampier,
 
 973 So.2d at 232-33(¶ 32) (citing
 
 Milano v. State,
 
 790 So.2d 179, 184(¶ 14) (Miss.2001)). If the jury instructions given fairly announce the law and create no injustice, this Court will not find any reversible error.
 
 Id.
 

 
 *907
 
 ¶ 38. Defense counsel submitted proposed jury instruction D-l, which instructed the jury, in pertinent part, to find Miller guilty if the jury found beyond a reasonable doubt that Miller “concealed, received, relieved, aided, or assisted a felon, knowing that such person had committed a felony” with the intent of helping the felon evade the law. The State submitted a similar jury instruction. However, proposed jury instruction S-l specifically instructed the jury, in pertinent part, to find Miller guilty if the jury found beyond a reasonable doubt that:
 

 [ Miller] did willfully, unlawfully, and fe-loniously aid a felon, Jerry Montez Winters, knowing that he, the said Jerry Montez Winters, had committed a felony, to wit: Murder....
 

 Defense counsel did not object to jury instruction S-l. In fact, defense counsel voluntarily withdrew jury instruction D-l. Defense counsel did not submit any other jury instruction relating to the elements of the crime or the elements of murder.
 

 ¶ 39. In regard to accessory crimes, the jury must find beyond a reasonable doubt that the underlying felony was committed.
 
 See Wilson v. State,
 
 592 So.2d 993, 997 (Miss.1991). We find that the jury instruction given properly instructed the jury that it had to find that Winters had committed murder and that Miller had assisted Winters knowing that he had committed murder. As previously mentioned, Miller did not submit a murder instruction during the trial. To the contrary, Miller and his defense counsel conceded the fact that Winters had murdered Jackson. There was no evidence presented to the contrary. Because of this concession, we find that there was no necessity for a jury instruction that delved into the specifics of the crime of murder or the elements of justifiable homicide. This issue is without merit.
 

 6. Indictment
 

 ¶ 40. Miller argues that the indictment was fatally defective because the indictment failed to name the alleged victim of the murder. Whether Miller’s indictment was fatally defective is a question of law, which is reviewed de novo.
 
 See Gilmer v. State,
 
 955 So.2d 829, 836(¶ 24) (Miss.2007). “An indictment must contain (1) the essential elements of the offense charged, (2) sufficient facts to fairly inform the defendant of the charge against which he must defend, and (3) sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense.”
 
 Id.
 
 at 836-37 (citing
 
 Hamling v. United States,
 
 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)).
 

 ¶41. The indictment read that Miller:
 

 On or about the 1st day [of] November, 2006, in Attala County, Mississippi, and within the jurisdiction of this Court, did willfully, unlawfully and feloniously aid Jerry Montez Winters to avoid arrest, trial, conviction or punishment then and there knowing that he, the said Jerry Montez Winters, had willfully, unlawfully and feloniously committed the felony offense of Murder, by assisting him in attempting to locate the murder weapon and other incriminating evidence left at the crime scene, and that [Miller] rendered such assistance with the unlawful and felonious intent to enable said felon to avoid arrest, trial, conviction, or punishment after the commission of such felony, and against the peace and dignitary of the State of Mississippi.
 

 Miller argues that there was nothing in the indictment from which he could identify the victim of the murder; therefore, he contends that the indictment was defective.
 

 ¶ 42. The supreme court has stated that the victim’s name must be included in the
 
 *908
 
 indictment where that is an essential element of the offense. Sanderson
 
 v. State,
 
 883 So.2d 558, 560(8) (Miss.2004) (citing
 
 Burks v. State,
 
 770 So.2d 960, 963 (Miss.2000)). However, in
 
 Sanderson,
 
 the supreme court found that an indictment was not defective where the indictment failed to state the name of the victim because there was no suggestion that the victim’s name was an element of the crime charged.
 
 Id.
 
 at 560-61(¶ 8).
 

 ¶43. As previously mentioned, these are the elements of the crime of accessory after the fact:
 

 (1) a completed felony has been committed; (2) the accused concealed, received, relieved, aided, or assisted a felon, knowing that such person had committed a felony; and (3) such assistance or aid was rendered with the intent to enable such felon to escape or avoid arrest, trial, conviction, or punishment after the commission of the felony.
 

 Dampier,
 
 973 So.2d at 231(¶ 28) (quoting
 
 Byrom,
 
 863 So.2d at 874-75(¶ 132)). Like
 
 Sanderson,
 
 there is no indication in this case that the identity of the victim is an essential element of the crime. Miller’s indictment essentially tracked the language of the statute. The law is clear that where an indictment tracks the language of the statute, the indictment sufficiently puts the defendant on notice of the charges against him in order to prepare his defense.
 
 See Berry v. State,
 
 996 So.2d 782, 788(¶ 14) (Miss.2008). Thus, we find that Miller’s indictment was not defective. This issue is without merit.
 

 7. Ineffective Assistance of Counsel
 

 ¶ 44. Miller argues that his trial counsel was ineffective because: (1) his trial counsel failed to request that his case be transferred to youth court; (2) his trial counsel failed to object to the admission of his statements taken by the police; and (3) his trial counsel failed to offer an elements instruction as to the crime of murder.
 

 ¶ 45. On direct appeal, this Court is limited to the trial record when reviewing claims.
 
 Archer v. State, 986
 
 So.2d 951, 955(¶ 15) (Miss.2008). Mississippi Rule of Appellate Procedure 22(b) provides the Court the authority to address an ineffective assistance of counsel claim on direct appeal where the facts are apparent in the trial record.
 
 Id.
 
 at (¶ 16). However, there are times in which there is not enough evidence in the trial record for the Court to adequately address the issue.
 
 Id.
 
 at (¶ 15). Under this circumstance, the supreme court has held that “the appropriate procedure is to deny relief, preserving the defendant’s right to argue the issue through a petition for post-conviction relief.”
 
 Id.
 
 (citing
 
 Bead v. State,
 
 430 So.2d 832, 837 (Miss.1983)).
 

 ¶ 46. We find that there is not enough evidence in the trial record for the Court to address Miller’s claim of ineffective assistance of counsel. Therefore, we deny relief without prejudice to Miller’s right to raise this argument in a timely filed motion for post-conviction relief, if he so chooses.
 

 8. Cumulative Error
 

 ¶ 47. Miller argues that the cumulative effect of the errors in his trial warrants reversal. Under the cumulative-error doctrine, “individual errors, which are not reversible in themselves, may combine with other errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial.”
 
 Harris v. State,
 
 970 So.2d 151, 157(¶ 24) (Miss.2007) (quoting
 
 Ross v. State,
 
 954 So.2d 968, 1018(¶138) (Miss.2007)). However, where the Court does not find any reversible error in any part, there can be no reversible error to the whole that warrants reversal.
 
 Id.
 
 (cit
 
 *909
 
 ing
 
 Gibson v. State,
 
 731 So.2d 1087, 1098(¶ 31) (Miss.1998)).
 

 ¶ 48. Because we have not found any reversible error in Miller’s case in any part, there can be no reversal based on the cumulative-error doctrine. This issue is without merit.
 

 CONCLUSION
 

 ¶ 49. We find that: (1) the youth court did not have jurisdiction over Miller’s case; (2) because the Youth Court Law did not apply to Miller’s case, parental notification was unnecessary; (3) the circuit court did not err by denying Miller’s motion for a JNOV; (4) the circuit court did not err by denying Miller’s motion for a new trial; (5) Miller’s jury-instruction issue is procedurally barred from review and also without merit; (6) Miller’s indictment was not defective; (7) Miller’s claim of ineffective assistance of counsel is denied without prejudice; and (8) there is no cumulative error that merits reversal.
 

 ¶ 50. THE JUDGMENT OF THE CIRCUIT COURT OF ATTALA COUNTY OF CONVICTION OF ACCESSORY AFTER THE FACT TO MURDER AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH ONE YEAR AND SIX MONTHS TO SERVE AND THREE YEARS AND SIX MONTHS OF POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ATTALA COUNTY.
 

 LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.