# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-01081-COA

**ARSENIO ROBINSON**                                 **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/16/2018 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS-BLACKMON |
| COURT FROM WHICH APPEALED: | HUMPHREYS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | AKILLIE MALONE-OLIVER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/12/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE BARNES, C.J., McDONALD AND LAWRENCE, JJ.

### McDONALD, J., FOR THE COURT:

¶1. A Humphreys County Circuit Court jury found Arsenio Robinson guilty of being an accessory after the fact to a murder in violation of Mississippi Code Annotated section 97-1-5 (Rev. 2014) and guilty of participation in gang activity in violation of Mississippi Code Annotated section 97-44-19(2) (Rev. 2014). The court sentenced Robinson to twenty years in the custody of Mississippi Department of Corrections (MDOC), with five years suspended and fifteen years to serve, and five years of supervised probation for the accessory-after-the-fact conviction; the court sentenced Robinson to ten years in the custody of the MDOC for the participation-in-gang-activity conviction to run consecutively to the first sentence.

Robinson moved for a judgment of acquittal or, in the alternative, a new trial, which the circuit court denied. After reviewing the record, we affirm.

**Statement of the Facts and Procedural History**

¶2. On July 9, 2015, Robinson, a Greenville Police Department police officer, met his friends at a car wash in Belzoni, Mississippi, in Humphreys County. While at the car wash, Robinson started drinking. He conversed with Cordale Weathersby, a Vice Lords gang member, about an issue with Tahiti Banks, another Vice Lords member.[1] According to Weathersby, Robinson stated that Banks "had to die" because Banks was trying to take over the Vice Lords. Fred Hogan, also a Vice Lords gang member, joined the conversation, stating that he would "go over there and sort it out" with Banks.

¶3. Robinson and Hogan rode together in Robinson's car to Alberta Martin's barbeque gathering, which was located at 104 East Third Street in Belzoni, Mississippi. At the barbeque, Hogan and Banks argued, which led to Hogan shooting Banks several times. According to several witnesses, Robinson threw his car keys to Hogan and told him to "go go go." Robinson called his cousin to pick him up from the barbeque. From there, Robinson went to his parents' house. When law enforcement arrived at the scene, several witnesses identified Robinson as having been at the barbeque. Accordingly, the officers contacted the Greenville Police Department about Robinson's possible involvement in the shooting.

¶4. Robinson eventually turned himself in for questioning. Robinson stated the following in a voluntary statement: "I was at 3rd Street/McKinley Alley when I heard a gunshot go

---

[1] At trial, Robinson disputed speaking with Weathersby.

2

off[.] [T]wo males was [sic] in a scuffle. It was about 10:00 p.m." But Robinson made a contradictory statement in another voluntary statement:

> On Thursday, July 9, 2015 I Arsenio Robinson was at the car wash drinking. Myself and some other guys left the car wash and went on 3rd St. when I seen [sic] Blade and Fred get into a scuffle. I then heard a shot go off after and Blade was laying on the ground. I had been drinking with the other guys at the car wash and several people had my keys to get alcohol from under my truck. I heard one shot go off and then I heard about 3 or 4 more. I didn't seen [sic] when the shot was shot. I seen [sic] Blade grab Fred 1st then the gun shot when [sic] off.

¶5. On February 3, 2016, a Humphreys County grand jury indicted Robinson for Count I, being conspiracy to commit murder in violation of Mississippi Code Annotated section 97-1-1 (Rev. 2014); Count II, being accessory after the fact in violation of Mississippi Code Annotated section 97-1-5; and Count III, being participation in gang activity in violation of Mississippi Code Annotated section 97-44-19(2). The police arrested Robinson, and he was held in custody with bail set at $150,000.

¶6. Robinson filed a motion to dismiss his conspiracy-to-commit-murder charge on March 25, 2017, because the circuit court had granted Fred Hogan's motion for a directed verdict on his conspiracy-to-commit-murder charge. Robinson stated that "[w]hen the [c]ourt granted Hogan's motion for a directed verdict as to the conspiracy count to murder Tahiti Banks, that left no other person who has been charged or can be charged with conspiracy to murder Tahiti Banks." The circuit court granted this motion on June 19, 2017, dismissing Robinson's conspiracy-to-commit-murder charge.

¶7. Apparently, a first trial took place because Robinson moved for a mistrial and the

opportunity to file a motion for change of venue.[2] On June 21, 2017, the circuit court granted Robinson's motion for a mistrial because after the voir dire of the jury panel for more than two hours, the court found that the greater majority of the jury knew Robinson and his family as well as the victim and his family. Therefore, it would have been almost impossible to pick a jury from the panel.

¶8. The second trial took place in the Humphreys County Circuit Court, which lasted from June 25, 2018, through June 28, 2018. The State presented several witnesses, beginning with Officer David James of the Humphreys County Sheriff's Department. Officer James testified that he received a call that there had been a shooting on Third Street and McKinley Street in Belzoni, Mississippi. After arriving at the scene, he interviewed several witnesses. The witnesses testified that while at the barbeque, Hogan and Banks began arguing. Robinson then made "gang innuendoes." Shortly after, Hogan shot Banks once, walked away, but then turned around and shot Banks two or three more times. According to the witnesses, Robinson walked toward Hogan, threw his car keys, and told Hogan to get out of there.

¶9. Cordale Weathersby testified that he, Robinson, and Hogan were all members of the "Insane Vice Lords." Prior to the barbeque and shooting, Weathersby testified that he was with Hogan and Robinson at the car wash. According to Weathersby, he told Robinson that if Robinson's problem with Banks was personal, Robinson needed to handle it himself. Hogan and Robinson then drove away.

¶10. The State's next witness, Alberta Martin, testified that she saw Hogan murder Banks

---

[2] This motion is not in the record.

4

with a gun, stating the following: "He shot the first time and the second time, he emptied the clip. And when he got through shooting and he walked off going like in the middle of the road, and that's when Arsenio came, met him and throw the keys to him." Further, Martin stated that she did not hear Hogan ask Robinson for his car keys; instead, Robinson willingly gave his keys to Hogan, and Hogan then drove away in Robinson's car. Additionally, she testified that Robinson was in a gang.[3]

¶11. The State presented another witness, Jankia McKinley, who was present at the barbeque during the shooting. According to McKinley, Banks and Hogan were conversing when Robinson began to argue with Banks. Hogan then began arguing with Banks as well. McKinley stated that she heard Robinson call Banks "a mafia and an imposter." Hogan pushed Banks and then shot him once but came back to shoot Hogan about three more times. Right after the shooting, McKinley testified she saw Robinson throw Hogan his car keys, and Hogan sped off in Robinson's car. Based on her observation, McKinley stated that Robinson handed Hogan his car keys to assist him to leave the scene.

¶12. Leonard Robinson, another witness at the barbeque, testified that he heard Robinson call Banks "a mafia" and "an imposter," to which Banks responded, "I ain't nobody with that bullshit." Hogan then shot Banks multiple times. After the shooting, Leonard testified that he saw Robinson throw Hogan his car keys and say "go, go, go." Hogan then drove Robinson's car away from the murder scene.

¶13. At the close of the State's case-in-chief, Robinson's counsel moved for a directed

---

[3] Martin admitted that she did not say that she saw Robinson throw his car keys to Hogan in her handwritten statement on July 9, 2015, but she was "a little shaken up."

5

verdict. Specifically, Robinson requested that the court instruct the jury to find him not guilty to the accessory-after-the-fact-to-murder charge and not guilty to the participation-of-gang-activity charge. Regarding the accessory-after-the-fact charge, Robinson argued that the State had not proved that he had the intent to enable Hogan to escape and avoid arrest. He admitted that he did throw Hogan his keys, but it was not to assist him. Regarding the participation-of-gang-activity charge, Robinson argued that there was no evidence that he did anything for the benefit of a street gang. Further, he argued that because the circuit court already ruled that the conspiracy count could not be proved beyond a reasonable doubt, the State could not prove each and every element of participation of gang activity. The court denied Robinson's motion, finding that the State had put forth a prima facia case of the elements of the charge to accessory after the fact to murder as well as the charge of participation in gang activity. Robinson then testified as the only witness in his defense.

¶14. Robinson testified that on the day of the shooting, he did not have a conversation with Weathersby. Further, Robinson testified that Banks instigated the altercation at the barbecue by yelling at him and his friends, "[Y]ou still not running S-H-I-T." According to Robinson, Banks grabbed Hogan, and then the gun went off. He watched Hogan shoot Banks three or four more times, but he did not do anything because he claimed that he could not retrieve his gun from its holster. Robinson testified that he did not stay and protect the scene because "I was out there and there was a lot of commotion and I didn't know what was going to happen after that. So I went to the sheriff's department." He also admitted that he did not call the police but instead went to the sheriff's department to tell the police about the shooting. He

6

claimed that he was already on the way to the sheriff's department when his supervisor called and told him to turn himself in. Further, he did not attempt to help Banks because the Greenville Police Department's policy and procedure book states that "if we have consumed alcohol beverages, we can't act as law enforcement officers." Robinson then testified that Hogan demanded him to give him his car keys, and he only complied because he was afraid of Hogan.

¶15. The jury found Robinson guilty of accessory after the fact to murder and participation in gang activity on June 28, 2018. On July 3, 2018, the circuit court sentenced Robinson as stated above. Robinson was also ordered to pay $1,000 to the Victim's Compensation Fund and $376 court costs payable at the rate of $50 per month, beginning sixty days after his release from incarceration.

¶16. Robinson filed a motion for judgment of acquittal or, alternatively, a new trial on July 3, 2018. Robinson sought the acquittal or new trial because (1) the court did not have sufficient evidence; (2) the verdict was contrary to the weight of the evidence; (3) the verdict was not supported by substantial evidence; (4) the court failed in sustaining an objection to evidence adduced on behalf of the State; (5) excessive and unnecessary issues were submitted to the jury; (6) the court violated Robinson's Sixth Amendment right to confront the witnesses; and (7) the court violated Robinson's Fourteenth amendment due process rights. On March 18, 2019, the court denied Robinson's motion.

¶17. On June 24, 2019,[4] Robinson appealed, raising the following issues: (1) that the

_____

[4] On May 2, 2019, Robinson filed a motion to file an out-of-time appeal because the circuit clerk did not provide him with a copy of the order denying a new trial. He stated that

7

evidence presented at trial was insufficient to support Robinson's convictions; (2) the circuit court erred in giving the State's flight instruction when Robinson's purported flight was explained; (3) that the circuit court erred in admitting Fred Hogan's judgment of conviction; (4) that the circuit court erred in not instructing the jury on the statutory definitions obtained in the Mississippi Streetgang Act; and (5) that the circuit court erred in not instructing the jury on the elements of murder, depriving Robinson of a fair trial. Finding no error, we affirm.

**Standard of Review**

¶18.    In determining whether the evidence is sufficient, "[t]he relevant question is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Calloway v. State*, 281 So. 3d 909, 914 (¶16) (Miss. Ct. App. 2019) (quoting *Green v. State*, 269 So. 3d 75, 79 (¶12) (Miss. 2018)). "Under this inquiry, all evidence supporting the guilty verdict is accepted as true, and the State must be given the benefit of all reasonable inferences that can be drawn from the evidence." *Id*. "A conviction is sufficiently supported when it can be established, beyond a reasonable doubt, that every element of the offense was present." *Phillips v. State*, 285 So. 3d 685, 692 (¶26) (Miss. Ct. App. 2019), *cert. denied*, 284 So. 3d 754 (Miss. 2019). "We will reverse only where with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." *McCray v. State*, 263 So. 3d 1021, 1029 (¶24) (Miss. Ct. App. 2018).

---

he found out about the order on the same day the out-of-time motion was filed. The circuit court granted his motion with an order extending time for appeal on May 28, 2018.

¶19. "Jury instructions are generally within the discretion of the trial court, and the settled standard of review is abuse of discretion." *Johnson v. State*, 252 So. 3d 597, 599 (¶8) (Miss. Ct. App. 2017) (quoting *Moody v. State*, 202 So. 3d 1235, 1236-37 (¶7) (Miss. 2016)). This court reviews jury instructions as a whole and will not reverse the trial court's decision when the jury instructions, "taken as a whole, fairly—although not perfectly—announce the applicable primary rules of law." *Id.*

¶20. "The standard of review for admission of evidence is abuse of discretion." *Jones v. State*, 303 So. 3d 734, 736 (¶6) (Miss. 2020) (quoting *Debrow v. State,* 972 So. 2d 550, 552 (¶6) (Miss. 2007)). "[W]hen a question of law is raised, the applicable standard of review is de novo." *Id*. at 737 (¶6).

**Analysis**

### I. Whether the evidence presented at trial was insufficient to support Robinson's convictions.

¶21. Robinson argues that the evidence admitted at trial was insufficient to support his convictions. Specifically, he argues that his sole action of giving Hogan his car keys did not amount to accessory after the fact to murder because he was afraid, and the State presented no evidence of gang activity.

¶22. When reviewing whether the evidence was sufficient to support a conviction, "[the] inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." *Roby v. State*, 183 So. 3d 857, 869 (¶43) (Miss. 2016) (emphasis and internal quotation marks omitted). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any

9

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. (emphasis omitted).

¶23. "[A]n accessory-after-the-fact has been defined as 'a person assisting one who has completed the commission of a felony to avoid being apprehended, arrested, convicted, etc.'" *Thompson v. State*, 302 So. 3d 1230, 1233 (¶7) (Miss. Ct. App. 2020) (quoting *Bailey v. State*, 960 So. 2d 583, 590 (¶30) (Miss. Ct. App. 2007)). "The elements of the crime of accessory after the fact are: (1) 'a completed felony has been committed; (2) the accused concealed, received, relieved, aided or assisted a felon, knowing that such person had committed a felony; and (3) such aid or assistance was rendered with intent to enable such felon to escape or avoid arrest, trial, conviction or punishment after the commission of such felony.'" *Id.* (quoting *Harris v. State*, 290 So. 2d 924, 925 (Miss. 1974)).

¶24. Mississippi Code Annotated section 97-44-19(2) states that any person who committed a felony "for the benefit of, at the direction of, or in association with any criminal street gang, with the intent to promote, further, or assist in the affairs" is guilty of participation in gang activity.

¶25. In the case at bar, the State presented several eyewitnesses who testified at trial that after Hogan shot Banks, Robinson willingly threw Hogan his car keys, which Hogan then used to escape the murder scene in Robinson's car. Specifically, the witnesses heard Robinson tell Hogan to "go go go" once he gave Hogan his keys. Significantly, Robinson showed signs of guilt. As a police officer, Robinson initially failed to disclose to police his whereabouts during the shooting. In his voluntary statements, Robinson alleged that he was

10

not at the scene when the shooting occurred, nor did he tell the police about his giving Hogan his car keys so Hogan could escape. Then, he made conflicting statements when he testified at trial, admitting that he was at the scene of the shooting and gave his car keys to Hogan out of fear. Additionally, Robinson offered no assistance to Banks, nor did he call the police for assistance at the crime scene. In fact, Robinson left the crime scene and went to his parents' house. While Robinson claimed that he offered no assistance to Banks personally because he (Robinson) had been drinking, as a police officer, he still made no efforts to secure the scene and immediately call the police after the shooting occurred.

¶26. Furthermore, several witnesses testified that they personally knew that Robinson was a member of the Vice Lords gang and used "gang innuendos" at the barbeque. The State also presented evidence of Robinson's tattoos, which are known Vice Lord gang signs, and Robinson in a Vice Lords shirt.

¶27. In reviewing the evidence in the "light most favorable to the prosecution," we find that a rational trier of fact in this case, the jury, could have found the essential elements of the crime beyond a reasonable doubt that Robinson intended to assist Hogan after the fact of a murder and that the felony involved was due to his association of the Vice Lords street gang. Therefore, his issue is without merit.

**II.** **Whether the circuit court erred in giving the State's flight instruction when Robinson's purported flight was explained.**

¶28. Robinson argues that the circuit court erred in giving the State's flight instruction because he had an independent reason for his purported flight. We disagree.

¶29. The Mississippi Supreme Court has held that "[a] flight instruction may be given if

11

'that flight is unexplained and somehow probative of guilt or guilty knowledge.'" *Anderson v. State*, 185 So. 3d 966, 970 (¶10) (Miss. 2015) (quoting *Reynolds v. State*, 658 So. 2d 852, 856 (Miss. 1995)). "Therefore, unexplained flight need only tend to prove guilt or guilty knowledge to satisfy the *Reynolds* probative requirement." *Id*. (internal quotation marks omitted). A trial judge must (1) determine whether the evidence of flight is probative; and (2) if so, the trial judge sends the issue to the jury. *Id*. at (¶11). "Generally, evidence of flight is admissible as evidence of consciousness of guilt [b]ut an instruction that flight may be considered as a circumstance of guilt or guilty knowledge is appropriate only where that flight is unexplained and somehow probative of guilt or guilty knowledge." *States v. State*, 88 So. 3d 749, 758 (¶37) (Miss. 2012) (internal quotation marks omitted).

¶30.     In the present case, the jury was provided the following instruction:

Jury Instruction No. 9

The Court instructs the Jury that flight is a circumstance from which in the absence of a reasonable explanation therefor, guilty knowledge and fear may be inferred. If you find from the evidence in this case, beyond a reasonable doubt that the defendant, Arsenio Robinson[,] did flee or go into hiding after the killing of Tahiti Banks, then the flight of Arsenio Robinson is to be considered in connection with all other evidence in this case. You will determine from all the facts whether the flight was from conscious sense of guilt or whether it was caused by other things, and give it such weight as you think it is entitled to in determining the guilt or innocence of Arsenio Robinson.

¶31.     Here, Robinson, a police officer, made several contradictory statements, including denying that he was the scene of the shooting and then that he fled the scene. He first stated that he fled the crime scene because there was so much commotion, but he also said that he was afraid of Hogan. He also stated that after the shooting, he was going to the sheriff's

12

office, but the sheriff's office had to call him into questioning. Further, Robinson gave Hogan the keys to his car, which Hogan used to escape. There is clear probative value of his flight. Even if the flight instruction was improperly given, it would amount to harmless error. *Id*. at 757-58 (¶38). An error is harmless if "it is clear beyond a reasonable doubt that it did not contribute to the verdict." *Id*. For the reasons stated that there was sufficient evidence to find Robinson guilty of accessory after the fact to murder and participation in gang activity, the flight instruction did not have any bearing on the verdict. We find that the circuit court did not abuse its discretion in giving the State's flight instruction.

### III. Whether the circuit court erred in admitting Fred Hogan's judgment of conviction.

¶32. Robinson argues for the first time on appeal that the circuit court erred in admitting into evidence Hogan's murder conviction because it violated his due process rights and absolved the State of proving Robinson's guilt. "Failure to raise an issue at trial bars consideration on an appellate level." *McKnight v. State*, 187 So. 3d 635, 645 (¶24) (Miss. Ct. App. 2015) (quoting *Parisi v. State*, 119 So. 3d 1061, 1066 (¶19) (Miss. Ct. App. 2012)). Notwithstanding the procedural bar, we find this issue is without merit.

¶33. Mississippi Code Annotated section 97-1-5 (Rev. 2014) defines accessory after the fact as follows: "[e]very person who shall be convicted of having concealed, received, or relieved any felon, or *having aided or assisted any felon, knowing that the person had committed a felony, with intent to enable the felon to escape* or to avoid arrest, trial, conviction or punishment after the commission of the felony, on conviction thereof shall be imprisoned in the custody of the Department of Corrections." (Emphasis added).

¶34. "In regard to accessory crimes, the jury must find beyond a reasonable doubt that the underlying felony was committed." *Miller v. State*, 18 So. 3d 898, 907 (¶39) (Miss. Ct. App. 2009) (citing *Wilson v. State*, 592 So. 2d 993, 997 (Miss.1991)). In the present case, the State used Hogan's murder conviction only to show that Robinson assisted a felon, Hogan, when he handed Hogan the keys to the car as a way to escape. In order to prove that Robinson was an accessory after the fact to murder, the admission of Hogan's murder conviction was necessary. Therefore, this issue is without merit.

**IV.    Whether the circuit court erred in failing to instruct the jury on the statutory definitions obtained in the Mississippi Streetgang Act.**

¶35. Robinson argues that the circuit court erred when the court did not provide the jury with the Mississippi Streetgang Act's definitions.[5] According to Robinson, "[w]ithout knowing the definitions, the jury was left to merely speculate . . . ." Although this issue is

_____

[5] Mississippi Code Annotated section 97-44-3 (Rev. 2014), also known as the Mississippi Streetgang Act, provides definitions for streetgang, streetgang member, and gang member activity:

> (a) "Streetgang" or "gang" or "organized gang" or "criminal streetgang" means any combination, confederation, alliance, network, conspiracy, understanding, or other similar conjoining, in law or in fact, of three (3) or more persons with an established hierarchy that, through its membership or through the agency of any member, engages in felonious criminal activity. For purposes of this chapter, it shall not be necessary to show that a particular conspiracy . . . in law or in fact, can be demonstrated by a *preponderance of the competent evidence*. However, any evidence reasonably tending to show or demonstrate, in law or in fact, the existence of or membership in any conspiracy, confederation or other association described herein, or probative of the existence of or membership in any such association, shall be admissible in any action or proceeding brought under this chapter.

(Emphasis added).

14

procedurally barred,[6] notwithstanding the procedural bar, this issue is without merit because there is no requirement that the Mississippi Streetgang Act's definitions be incorporated into jury instructions.

¶36. In *Croft v. State*, 283 So. 3d 1 (Miss. 2019), the Mississippi Supreme Court gave a warning about using the Mississippi Streetgang Act in criminal proceedings. The State used the Mississippi Streetgang Act as a jury instruction. *Id*. at 7 (¶20). Our supreme court found that a jury instruction that follows the language of the Act would be "valid in civil actions, but such an instruction fails to pass muster in criminal proceedings." *Id*. at 8 (¶23). The State was required to prove beyond a reasonable doubt that the defendant "intentionally directed, participated, conducted, furthered, or assisted in the commission of illegal gang activity" under Mississippi Code Section 97-44-19(1). *Id*. at (¶24). The language in the Mississippi Streetgang Act uses "preponderance of the evidence" instead of the required language "beyond the reasonable doubt" to find participation in gang activity. *Id*. The supreme court found that the jury instruction constituted plain error and required a reversal for a new trial. *Id*. at 9 (¶26).

¶37. Unlike *Croft*, the jury was provided the following instruction regarding the participation of a streetgang charge:

Jury Instruction No. 4

1. The Defendant, Arsenio Robinson; 2. on or about July 9, 2015; 3. in Humphreys County, Mississippi; 4. did willfully, unlawfully and feloniously; 5. commit a felony for the benefit of, at the direction of, or in association with

---

[6] Robinson raises this issue for the first time on appeal, making it procedurally barred for consideration on appeal.

15

a criminal street gang; 6. to wit: assist or aid Fred Hogan to avoid arrest or punishment 7. while knowing he had committed a felony, the murder of Tahiti Banks 8. at the direction of, for the benefit of, or in association with Fred Hogan and or a street gang, then you shall find the defendant, Arsenio Robinson, *guilty of participation in gang activity*. If the State has failed to prove any one or more of the elements *beyond a reasonable doubt*, then you shall find the defendant not guilty of participation in gang activity.

(Emphasis added). It was not necessary to provide the language in the Mississippi Streetgang Act for a jury instruction, and our supreme court has warned against it. Finding that the State did not have to provide the jury with language pursuant to Mississippi Code Annotated section 97-44-3, we find that the court did not abuse its discretion.

**V.     Whether the circuit court erred in failing to instruct the jury on the elements of murder.**

¶38.    Robinson argues that since he was charged with being an accessory after the fact to murder, the circuit court erred when neither the court nor the State instructed the jury on the elements of murder. Notwithstanding the procedural bar, this issue is without merit.[7]

¶39.    The State uses *Miller v. State*, 18 So. 3d 898 (Miss. Ct. App. 2009), to illustrate that a jury instruction on the elements of murder is not required. In *Miller*, the defendant Miller, who was charged as being an accessory after the fact to murder, argued that the circuit court erred by failing to instruct the jury as to the elements of murder. *Id*. at 906 (¶36). The following instruction was given to the jury: "Miller did willfully, unlawfully, and feloniously aid a felon, Jerry Montez Winters, knowing that he, said Jerry Montez Winters, had committed a felony, to wit: Murder . . . ." *Id*. at (¶37). This court found the jury instruction

---

[7] Robinson failed to raise this issue in the lower court, which makes the issue procedurally barred for appellate review.

16

to be sufficient, and therefore "there was no necessity for a jury instruction that delved into the specifics of the crime of murder or the elements." *Id*. at (¶39).

¶40.   Like *Miller*, in the present case, there was no need for a jury instruction on the elements of murder.  The instructions included the necessary language to charge Robinson with being an accessory after the fact to murder:

Jury Instruction No. 3

1. The Defendant, Arsenio Robinson; 2. On or about July 9, 2015; 3. In Humphreys County, Mississippi; 4. Did willfully, unlawfully and feloniously; 5. having aided or assisted Fred Hogan, 6. knowing that Fred Hogan had committed murder, 7. with intent to enable Fred Hogan to escape or to avoid arrest, trial, conviction or punishment after the commission of the murder, then you shall find the defendant, Arsenio Robinson, guilty of accessory after the fact: If the State has failed to prove any one or more of the elements beyond a reasonable doubt, then you shall find the defendant not guilty of accessory after the fact.

This jury instruction clearly contained the required language to charge Robinson with being an accessory after the fact to murder.  Therefore, this issue is without merit.

**Conclusion**

¶41.   Finding no merit to Robinson's claims, we find that the circuit court did not abuse its discretion and affirm Robinson's convictions and sentences.

¶42.   **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE AND LAWRENCE, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., NOT PARTICIPATING.**

17