# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-KA-00770-SCT

*RICHARD LAMAR GREEN a/k/a RICHARD GREEN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/02/2017 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN, III |
| TRIAL COURT ATTORNEYS: | MICHAEL GUEST |
| | MARLIN A. MILLER |
| | WILLIAM ANDY SUMRALL |
| | THOMAS P. WELCH, JR. |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: JUSTIN TAYLOR COOK |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/18/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Richard Lamar Green ("Green") was convicted in the Circuit Court of Rankin County

for the attempted murder and kidnapping of his wife, Cathleen Green ("Cathy"). Green

appeals his convictions, arguing that the State presented insufficient evidence to convict him

of both counts. The Court finds that a reasonable juror could have found that the State had proved, beyond a reasonable doubt, each element of both convictions based on the testimony, evidence, and applicable law. We affirm Green's convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

¶2. Green and Cathy had been arguing for a few days. Cathy wanted a divorce because she was ready to be with someone else. Green found Cathy's phone and demanded that she unlock it, but she refused. Green became so agitated by Cathy's refusal that he walked outside and retrieved a machete from the toolbox of his vehicle. He then walked back inside and into the bedroom where Cathy and their four-year-old son were watching cartoons. Green removed Cathy from her bed, separating her from their child. Cathy threw her phone to the child and told him to call 911. Green dragged Cathy out of the bedroom and away from her son. He then forcibly dragged her down the hall, leaving bruises up and down her arms. Cathy was kicking and flailing as she tried to free herself from Green's grip, but he would not release her.

¶3. Upon reaching the living room (and out of their child's sight), Green repeatedly struck Cathy in the head with the machete. She tried to defend herself and received defensive wounds in the process. Cathy was screaming, asking Green, "stop, stop, what are you doing?" Green told Cathy, "I'm going to kill you with this machete." She was rendered helpless on the living room floor. When Green came back past her, Green told their son, "don't look at mommy." Cathy began pleading for her life. She told Green, "I'm your wife. What have you done? I have kids. I only have so much time. I only have so much blood.

2

You've got to do something now that you've done this." Green just looked at her, put his head in his hands and said, "I'm going to have to kill myself now." Cathy was left motionless, grew cold, and her bowels emptied. Green walked over her and out the front door, locking the door behind him. He also took all the cell phones from the house. Then, son in tow, he fled. Instead of killing himself, Green called 911 to report what he had done to Cathy.

¶4. The first officer to arrive was able to see Cathy lying on the floor behind the locked door. Other officers arrived to the scene and broke the window to enter. Cathy's face was covered in blood. Blood spatters covered the walls and a large amount of blood surrounded Cathy. Cathy's right pinky finger had been severed and was lying to the left side of her body. The officer testified that seeing all of her wounds was difficult because of the excessive blood, but that he could see that she had one laceration on her forehead and another behind her head. He also observed hair and brain matter on the floor around her.

¶5. Cathy was in and out of consciousness. She was able to tell the officers that "Richie" had caused the injuries with a machete, and that he had left with their son. The Pearl Police Department issued a county-wide be-on-the-lookout ("BOLO") notice for Green's vehicle, and a state-wide BOLO was dispatched. An investigator arrived, took photographs, and collected blood samples. He also observed pools of blood, hair, and brain matter on the carpet.

¶6.     Green later was apprehended in Pike County and returned to the Pearl police station. Green was read his *Miranda*[1] rights, which he, orally and in writing, agreed to waive. Green then confessed. The confession was recorded and played for the jury at trial. Cathy testified live. Her testimony corroborated Green's confession.

¶7.     Cathy was hospitalized for one week and then was transferred to a rehabilitation center for four weeks. Cathy's skull was shattered, and part of it was missing. The cranium had been broken in a complex fashion and depressed against her brain. The inner lining of Cathy's skull was damaged, and her brain itself had been damaged. She also had brain matter in her wounds. Cathy received fifty staples on the crown of her head. Part of her head tissue died. Cathy also had sustained a cut that extended halfway down her face. Her eye socket was fractured, and a piece of her nose had been cut off. Cathy's pinky finger was amputated, and each of the tendons in one hand had been cut. Her ring finger also was broken. Cathy sustained cuts down her back and bruises down her neck and behind her ear.

¶8.     Green was indicted for the attempted murder and kidnapping of Cathy. At trial, the law-enforcement officers, 911 operator, Cathy, and Cathy's treating physician testified. After the State rested, Green moved for a directed verdict. Green argued that the State had failed to prove all of the necessary elements for the charge of attempted murder. Specifically, Green argued that he had abandoned his attempt to murder Cathy because he called 911. Additionally, Green argued that no evidence was produced to support the charge of kidnapping. Instead, Green argued that what took place was merely a struggle that

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

4

proceeded from one room to another. Despite evidence to the contrary, Green further claimed that he never restrained Cathy or kept her from leaving. The trial court denied Green's motion.

¶9. The jury found Green guilty, as charged in the indictment, of attempted murder in Count I and of kidnapping in Count II. The jury unanimously sentenced Green to life imprisonment on Count I. The jury was unable to agree on a penalty for Count II. The trial judge held a sentencing hearing on Count II and sentenced Green to a term of thirty years to be served consecutively with the sentence in Count I in the custody of the Mississippi Department of Corrections.

¶10. Green filed a motion for judgment notwithstanding the verdict ("JNOV"), or alternatively, a motion for a new trial. Green argued, *inter alia*, that the verdict was against the overwhelming weight of the evidence, reasserting his arguments that he had abandoned any attempt to murder Cathy and that he had not kidnapped Cathy. The trial judge denied Green's motion. Aggrieved, Green appeals.

## ISSUES

¶11. Green does not challenge the weight of the evidence. Rather, Green challenges the sufficiency of the evidence, raising two issues on appeal:

I. Whether the State presented sufficient evidence to convict Green of kidnapping.

II. Whether the State presented sufficient evidence to convict Green of attempted murder.

## STANDARD OF REVIEW

5

¶12. In considering whether the evidence is sufficient to sustain a conviction, this Court employs a *de novo* standard of review. ***Brooks v. State***, 203 So. 3d 1134, 1137 (Miss. 2016) (citing ***Kirk v. State***, 160 So. 3d 685, 695 (Miss. 2015)). "The relevant question is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" ***Hearn v. State***, 3 So. 3d 722, 740 (Miss. 2008) (quoting ***Bush v. State***, 895 So. 2d 836, 843 (Miss. 2005), *abrogated on other grounds by* ***Little v. State***, 233 So. 3d 288, 289 (Miss. 2017)). "Under this inquiry, all evidence supporting the guilty verdict is accepted as true, and the State must be given the benefit of all reasonable inferences that can be drawn from the evidence." ***Galloway v. State***, 122 So. 3d 614, 665 (Miss. 2013). Appellate courts "should reverse only where, with respect to one or more elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." ***Boyd v. State***, 977 So. 2d 329, 337 (Miss. 2008) (citation omitted) (internal quotations omitted).

## DISCUSSION

### I.   Kidnapping

¶13. Green argues that the State failed to produce sufficient evidence to support his kidnapping conviction and asks this Court to reverse that conviction and to render a judgment of acquittal in his favor. Mississippi Code Section 97-3-53 defines kidnapping as follows:

> Any person who, without lawful authority and with or without intent to secretly confine, shall forcibly seize and confine any other person, or shall inveigle or kidnap any other person with intent to cause such person to be confined or imprisoned against his or her will[.]

Miss. Code Ann. § 97-3-53 (Rev. 2014).

¶14. Green argues that any kidnapping was incidental to the "alleged assault" against Cathy, and that, if this Court affirms his conviction, "a kidnapping charge could be brought concurrently to every single assault." Curiously, Green cites *Cuevas v. State*, 338 So. 2d 1236, 1238 (Miss. 1976), in support of his argument. In *Cuevas*, a Scott County prisoner confronted a jailer with a pistol and forced him to accompany him downstairs to the sheriff's office at gunpoint. *Cuevas*, 338 So. 2d at 1237. Once downstairs, the prisoner forced a highway patrolman to accompany him to a vehicle in a nearby lot. *Id.* Then, the prisoner crossed the street to a building where he encountered two employees of an automobile agency. *Id.* The prisoner directed one employee to accompany him to the "parts department" of the building at gunpoint. *Id.* The prisoner then held two employees hostage in the parts department for nearly two hours. *Id.* The prisoner eventually surrendered and was charged with, and convicted of, kidnapping. *Id.* The prisoner challenged the sufficiency of the evidence to sustain the charge of kidnapping. *Id.* The Court found that the evidence was sufficient to support his conviction, holding that

> If forcible detention or movement is merely incidental to a lesser crime than kidnapping, such confinement or movement is insufficient to be molded into the greater crime of kidnapping. An illustration might well be a strong-armed robbery where the victim is detained and perhaps moved a few feet while being relieved of his wallet. The detention and movement would not support kidnapping albeit with force and unlawful. On the other hand, if the confinement or asportation be not merely incidental to a lesser crime, but a constituent part of the greater crime, the fact of confinement or asportation is sufficient to support kidnapping without regard to distance moved or time of confinement.

*Id.* at 1238. The *Cuevas* Court concluded that the prisoner's purpose in "seizing and detaining [the hostage] was obviously to make good his escape." *Id.* "The confinement and

7

movement of [the hostage] by force from the service entrance of the building to the parts department of the building was sufficiently proved to support Cuevas' conviction." *Id.* at 1238-39.

¶15. Green's argument that his kidnapping conviction should be reversed under *Cuevas* is without merit. As explained in *Cuevas*, "[i]f forcible detention or movement is merely incidental to a *lesser* crime than kidnapping, such confinement or movement is insufficient to be molded into the *greater* crime of kidnapping." *Cuevas*, 338 So. 2d at 1238 (emphasis added). At the outset, there was no "lesser crime" than kidnapping in this case. Attempted murder is a "greater" crime than kidnapping under Mississippi's sentencing guidelines.[2] Furthermore, the jury was not presented with evidence that would show the kidnapping was "merely incidental" to the attempted murder of Cathy. Rather, the jury was presented with testimony and evidence demonstrating that the kidnapping was a separate, independent crime. Green confessed that he did not use the machete to hack or slash Cathy until after he had removed her from the bed and dragged her, fighting and screaming, down the hall and into another room, outside the presence of the child. The forcible seizure, removal, and asportation of Cathy against her will was a separate, distinct, and independent crime that occurred prior to Green's attempt to murder Cathy. Following *Cuevas*, the distance of asportation or time of confinement is immaterial. *Cuevas*, 338 So. 2d at 1238.

---

[2] Attempted murder carries a minimum sentence of twenty years. Miss. Code Ann. § 97-1-7 (Rev. 2014). Kidnapping carries a minimum sentence of only one year. Miss. Code Ann. 97-3-53.

8

¶16. Green acknowledges that *Cuevas* is the majority rule. Notwithstanding, Green argues that we should apply law from other jurisdictions[3] and adopt a Mississippi Court of Appeals dissent from *Salter v. State*, 876 So. 2d 412, 417 (Miss. Ct. App. 2003), that questioned *Cuevas*. In *Salter*, the defendant was convicted both of armed robbery and of kidnapping. *Id.* at 414. The defendant had held bank employees at gun point and had forced three of them to lie on the floor of the bank vault. *Id.* The defendant argued that no factual basis supported the kidnapping charges against him, and that any kidnapping had been merely incidental to the commission of the armed robbery and therefore was not a distinct and separate crime. *Id.* at 415. The Court of Appeals majority, citing this Court's holding in *Cuevas*, held that, by ordering the employees into the bank vault against their will, the defendant fulfilled the statutory definition of kidnapping, and that the distance of asportation was not important. *Id.* The dissent opined that "the better view to me is that telling people to move around inside the bank, even into the bank vault, did not have significance independent of the bank robbery itself." *Id.* at 419 (Southwick, P.J., dissenting)*.* Although the defendant's act of forcing the employees into a bank vault at gunpoint "did not have significance" to the dissenting author, we surmise that it was a significant, terrifying experience for the bank employees. Green's argument to adopt the *Salter* dissent is rejected.

---

[3] *Inter alia*, Green cites a Connecticut decision that involves legislative intent of a Connecticut statute. *State v. Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008). Equally unavailing is the Third Circuit's interpretation of a Virgin Islands statute and the wording of the Model Penal Code. Sep. Op. ¶ 28-29. The controlling law is Mississippi Code Section 97-3-53.

¶17.    This Court recently affirmed a kidnapping conviction in ***Graham v. State***, 185 So. 3d 992, 995 (Miss. 2016), in which the kidnapping was committed along with another crime.[4] In ***Graham***, the defendant was convicted of kidnapping, forcible rape, and sexual battery. ***Graham***, 185 So. 3d at 995.  The defendant challenged his kidnapping conviction, arguing that the victim never fought back against him, and that she was never told she was not free to leave.  ***Id.*** at 1003.  This Court rejected that argument, noting that the kidnapping statute does not require the victim to attempt to flee, nor does it require the kidnapper to tell the victim that he or she cannot leave.  ***Id.***  The defendant also argued that neither he nor his co-conspirator did anything that could be construed as kidnapping, and "that if the kidnapping statute were to be interpreted so broadly, every single rape or assault allegation could be accompanied by a kidnapping charge"—the same argument presented today.  ***Id.***  This Court rejected the defendant's "parade-of-horribles" argument.  ***Id.***  The Court observed, *inter alia*, that the victim had been punched by one of the defendants, that they had blocked her exit when she realized she was in danger, and that, as soon as the defendants had backed away to fix their clothes after the sexual assault, she fled.  ***Id.*** at 1003-04.   We held that a reasonable juror could have found that the evidence supported the victim's allegation of kidnapping based on the testimony and evidence presented.  ***Id.*** at 1004.

¶18.    Here, the jury heard testimony that Green entered the bedroom where Cathy was lying with their four-year-old child, that he snatched her from the bed against her will, and that he forcefully dragged her out of the bedroom, down a hall, and into the living room.  *See*

---

[4] ***Graham*** was introduced in this appeal by Green, albeit for a different purpose.

*Williams v. State*, 544 So. 2d 782, 790 (Miss. 1987) (holding that reasonable juror could have found that murder victim was also kidnapped when "she was dragged or carried into the woods from the truck"). Furthermore, Cathy testified that she was kicking and flailing as Green dragged her down the hallway, and that Green would not let her go. Cathy tried to free herself, but could not. Only after the asportation was complete did Green begin to hack Cathy with a machete until her blood and brain matter covered the floor and walls and she could no longer move. Then, he stepped over her body, left the home with her cell phone, and locked the door behind him. Viewing the evidence and testimony in the light most favorable to the State, a reasonable juror could have found that the State had proved, beyond a reasonable doubt, each element of kidnapping. *Graham*, 185 So. 3d at 1003.

## II. Attempted Murder

¶19. Despite Cathy's testimony that Green had told her, "I'm going to kill you with this machete," Green argues that the State produced insufficient evidence to convict him of attempted murder, because he alleges he abandoned any attempt to kill Cathy by calling 911. Green requests that this Court reverse his conviction, render a verdict of not guilty, and remand for resentencing for aggravated assault. Mississippi Code Section 97-1-7(2) defines attempted murder as follows:

> Every person who shall design and endeavor to commit an act which, if accomplished, would constitute an offense of murder under Section 97-3-19, but shall fail therein, or shall be prevented from committing the same, shall be guilty of attempted murder[.]

Miss. Code Ann. § 97-1-7(2) (Rev. 2014). "An attempt to commit a crime consists of three elements: (1) an intent to commit a particular crime; (2) a direct [overt] act done toward its

11

commission; and (3) the failure to consummate its commission." ***Brooks v. State***, 18 So. 3d 833, 841 (Miss. 2009). "The mere intention to commit a crime is not punishable; 'the intention must therefore be coupled with an overt act.'" ***Croft v. State***, 992 So. 2d 1151, 1159-60 (Miss. 2008) (quoting ***Bucklew v. State***, 206 So. 2d 200, 202 (Miss. 1968)).

¶20. Green argues that he abandoned any attempt to kill Cathy, and that, under Mississippi's attempt statute, prevention from or frustration of the crime's completion must result from extraneous causes. Green cites ***West v. State***, 437 So. 2d 1212, 1213 (Miss. 1983) (holding defendant did not commit the specific crime of attempted sexual battery because there was no sexual penetration), and ***Bucklew***, 206 So. 2d at 202 (holding that defendant did not attempt to embezzle city funds because he did not commit an overt act toward the commission of the crime). Green asserts that the State's indictment and its jury instruction allege that the prevention or frustration of Green's attempt to murder Cathy was Green's calling 911. Thus, Green argues that the completion of the crime was prevented or frustrated by the 911 call and not by extraneous causes.

¶21. The State argues that, while Green did not succeed in killing Cathy, Green completed the crime of attempted murder. The State cites ***Jackson v. State***, in which this Court held,

> It must be remembered that an attempt to commit the crime of burglary (or an attempt to commit any other crime, for that matter) is just as much a crime as the completed act is a crime. Where a person with the intent to commit a crime performs some overt act toward the commission of the intended crime, he is guilty of the crime of "attempt to commit the crime," provided the act is more than mere preparation. One may intend to commit the crime of murder and may procure [a] firearm for that purpose, but until his acts go beyond mere preparation to the extent of doing some overt act in the actual carrying into effect his intent, he is not guilty of an "attempted murder." *If, on the other*

12

> *hand, one proceeds beyond mere preparation, his voluntary abandonment will not bar his conviction.*

***Jackson v. State***, 254 So. 2d 876, 878 (Miss. 1971) (emphasis added).

¶22.    Based on this Court's holding in ***Jackson***, the State asserts that, because Green's action of striking Cathy with the machete went beyond mere preparation, he cannot claim that he voluntarily abandoned his attempt by calling 911 afterward.  We agree.

¶23.    The jury heard testimony that Green intended to murder Cathy and that Green took action to carry out the crime, well beyond mere preparation, by repeatedly striking her with a machete.  Even if Green prevented Cathy from succumbing to the wounds he inflicted by calling 911 after he left the home, he completed the crime of attempted murder when he proceeded beyond mere preparation in carrying out his intent to kill Cathy.  ***Jackson***, 254 So. 2d at 878.  Thus, any alleged "abandonment" by Green "will not bar his conviction." ***Id. See also Bucklew***, 206 So. 2d at 204 ("[A] voluntary abandonment of an attempt which has proceeded beyond mere preparation will not bar a conviction for the attempt.").  The State presented sufficient evidence such that a reasonable juror could have found that the State had proved, beyond a reasonable doubt, each element of attempted murder.

¶24.    Green alternatively argues in a footnote that the attempted-murder statute, Mississippi Code Section 97-1-7(2), is "probably" unconstitutionally vague and overbroad.  Green states that the Court need not address this argument in order to reverse based on the State's alleged failure to produce sufficient evidence to convict Green of attempted murder. As discussed, a reasonable juror could have found that the State had proved, beyond a reasonable doubt, each element of attempted murder.  Furthermore, Green cites no authority for his argument

that the attempted-murder statute is "probably" unconstitutionally vague and overbroad. The Court declines to consider Green's alternative argument. *See **Byrom v. State***, 863 So. 2d 836, 853 (Miss. 2003) ("Failure to cite relevant authority obviates the appellate court's obligation to review such issues.").

## CONCLUSION

¶25. The State produced sufficient evidence such that a rational juror could have found that the elements of kidnapping and attempted murder had been proved beyond a reasonable doubt. The Court affirms Green's convictions and sentences.

¶26. **AFFIRMED.**

**COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. KING, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., AND KITCHENS, P.J.**

**KING, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶27. Although I agree with the majority's conclusion that the State produced sufficient evidence to support Green's attempted murder conviction, I respectfully dissent from the majority's finding that the State produced sufficient evidence to support his kidnapping conviction. I would find that Green's act of moving Cathy from the bedroom of her house to the living room of her house merely was incidental to the attempted murder.

¶28. Green argues that, because his confinement of Cathy had no significance independent of his assault of Cathy, his kidnapping conviction should be reversed and rendered. "When assessing the legal sufficiency of a conviction, a reviewing court determines 'whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

14

could have found the essential elements of the crime beyond a reasonable doubt.'" ***Powell v. State***, 249 So. 3d 355, 361 (Miss. 2018) (quoting ***Cotton v. State***, 144 So. 3d 137, 142 (Miss. 2014)). Pursuant to Mississippi Code Section 97-3-53, the crime of kidnapping is committed when

> Any person who, without lawful authority and with or without intent to secretly confine, shall forcibly seize and confine any other person, or shall inveigle or kidnap any other person with intent to cause such person to be confined or imprisoned against his or her will . . . .

Miss. Code Ann. § 97-3-53 (Rev. 2014). However, when a confinement is merely incidental to a lesser crime than kidnapping, this Court has found that confinement to be insufficient to support a kidnapping conviction. ***Cuevas v. State***, 338 So. 2d 1236, 1238 (Miss. 1976). In ***Cuevas***, this Court held,

> If forcible detention or movement is merely incidental to a lesser crime than kidnapping, such confinement or movement is insufficient to be molded into the greater crime of kidnapping. An illustration might well be a strong-armed robbery where the victim is detained and perhaps moved a few feet while being relieved of his wallet. The detention and movement would not support kidnapping albeit with force and unlawful. On the other hand, if the confinement or asportation be not merely incidental to a lesser crime, but a constituent part of the greater crime, the fact of confinement or asportation is sufficient to support kidnapping without regard to distance moved or time of confinement.

***Cuevas***, 338 So. 2d at 1238.[5]

---

[5]*See also* ***State v. Salamon***, 287 Conn. 509, 545–46, 949 A.2d 1092, 1119 (2008) ("Although [the cases cited above] involve varying statutory language and analyses, they share a common theme, namely, that it is unlikely that the legislature intended to expose an accused to a kidnapping conviction, and the severe sanctions accompanying such a conviction, when the restraint involved is merely incidental to the commission of a separate, underlying crime.").

¶29.    Green's case is akin to the strong-armed robbery illustration in *Cuevas*. Here, Green did not remove Cathy from her house or transport her to any location outside of her own house. The Model Penal Code states that "a person is guilty of kidnapping *if he unlawfully removes another from his place of residence* or business, or *a substantial distance* from the vicinity where he is found, or if he unlawfully confines another for *a substantial period* in a place of isolation . . . ." Model Penal Code § 212.1 (Am. Law Inst. 2017) (emphasis added). Similarly, after an analysis of kidnapping laws in numerous jurisdictions, the United States Court of Appeals for the Third Circuit determined that four factors are used in each approach to kidnapping:

> (1) the duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the detention or asportation which occurred is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense.

*Gov't of Virgin Islands v. Berry*, 604 F.2d 221, 227 (3d Cir. 1979).

¶30.    The instant case involves no substantial duration of detention or asportation. Green's act of moving Cathy to the living room also created no significant danger to Cathy independent of Green's attempt to murder her. In fact, Green stated that when he became agitated with Cathy, he first went to his truck to retrieve his machete; he then came back into the house and commenced his assault on Cathy. Therefore, although the majority reasons that Green began his assault on Cathy only after the asportation was complete, Green already had commenced his attempted murder on Cathy when he walked into the house to the bedroom where Cathy was located. Because Green's removal of Cathy to the living room and his

16

assault of Cathy are so interwoven, I believe that the removal was merely incidental to the attempted murder of Cathy. Accordingly, I would hold that, considering the evidence in the light most favorable to the verdict, the evidence was insufficient to support Green's kidnapping conviction. I would affirm his conviction of attempted murder.

**WALLER, C.J., AND KITCHENS, P.J., JOIN THIS OPINION.**