# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-KA-01153-SCT

*HAROLD WALKER, JR. a/k/a HAROLD WALKER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/15/2023 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| TRIAL COURT ATTORNEYS: | AAFRAM YAPHET SELLERS |
| | THOMAS M. FORTNER |
| | JOSEPH SCOTT HEMLEBEN |
| | ESEOSA GWENDLINE AGHO |
| | LOUIS F. COLEMAN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAMON R. STEVENSON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA BYRD |
| DISTRICT ATTORNEY: | JODY EDWARD OWENS, II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/20/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE RANDOLPH, C.J., MAXWELL AND SULLIVAN, JJ.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     In 2023, Harold Walker Jr. was convicted by a jury of the Circuit Court of the First Judicial District of Hinds County for (1) one count of first degree murder of Bryant Robinson under Mississippi Code Section 97-3-19(1)(a) (Rev. 2020), (2) one count of shooting into an occupied vehicle in violation of Mississippi Code Section 97-25-47 (Rev. 2020), and (3) one

count of felony fleeing from law enforcement in violation of Mississippi Code Section 97-9-72 (Rev. 2020). Walker raised five issues on appeal:

(1)     Whether the trial court erred by refusing Walker's lesser-included-offense jury instruction for heat of passion manslaughter.

(2)     Whether the evidence was insufficient to support a finding of first degree murder, or, in the alternative, whether Walker's conviction for first degree murder was against the overwhelming weight of the evidence.

(3)     Whether the trial court abused its discretion under Mississippi Rule of Evidence 404(b) by admitting the statement Walker gave law enforcement following his arrest.

(4)     Whether the trial court erred by failing to ensure that the court reporter transcribed the jury instructions conference.

(5)     Whether Walker's trial counsel was ineffective in failing to ensure that the entirety of the proceeding was on the record and failing to object to the introduction of Walker's statement into evidence.

Finding no reversible error, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2.     On the night of January 12, 2020, Mary Denton approached a red light at the intersection of Colonial Circle and Old Canton Road in Jackson, Mississippi. According to Denton, "I'm sitting there and a big flash of light hits me on the right side of my face and . . . caused me to look over to see what that was. And I saw a white 4-door car, swerve out of his lane, and came out real fast . . . . He came out, swerved around to block the van that was in front of him." Immediately thereafter, Denton "saw a fellow get out of his *driver's side door*, run around the front of his car to where he was standing at the windshield of the van;

2

and fired. I heard seven to 10 shots." (Emphasis added.) When asked to describe the shooter, Denton responded, "[k]ind of younger black—slender, too."

¶3. Denton took photographs, which she later provided to law enforcement. From those photographs, Denton identified a van parked in the yard of a residence, and "[t]his white car, with the shooter, had circled around the van, going in that yard . . . . He circled the van and [then] headed back the way he came."

¶4. Marsha Robinson lived on the corner of Old Canton Road and Colonial Circle. According to Robinson, on the night of January 12, 2020,

> [I]t was late . . . I was in bed. So I got up to use the restroom and when I was getting back, well, getting ready to get back in the bed, I hear gunshots, several. So I, kind of, jump up, again and I run to my living room, which is, literally, the next room. And so I—curtains are or were already open and I see . . . two car lights in my yard. And their lights were on of course, and it's night time, so that's kind of, blinding me. But I still see, kind of, see what's going on.

¶5. Robinson continued, "[b]ut what I was witnessed, I'll say, *a* person coming from the back end of a white car and *I see them getting into the driver's side of the car* and speeding out through my yard . . . and leaving . . . ." (Emphasis added.) Subsequently, according to Robinson,

> I opened up my front door to . . . see what was going on because I'm confused. So I see police . . . over to my left side. . . . [T]wo police cars had a car pulled over. And at that time, I see one of the police, kind of, drive off from there and go towards the same direction that the white car went to after they left out of my yard. And then the second police car that I saw . . . pulled up to the scene next to the van that was still in my yard.

¶6. Antonio Langston was employed by the Jackson Police Department (JPD) on January 12, 2020. Around 9:45 p.m. that night, Langston was driving southbound on Old Canton

3

Road in his patrol vehicle when he noticed commotion. Langston made contact with a woman at the intersection with Colonial Circle. According to Langston, she pointed at the Honda, which was in the process of making a U-turn in Robinson's yard, and she screamed, "he just shot somebody . . . ." Langston pursued the Honda, which was driving at an "erratic, trying to get away speed."

¶7. The Honda turned onto Adkins Boulevard. Langston pursued with his lights and sirens engaged to alert the driver to stop. Langston observed the Honda make a right turn at Concord Drive then wreck into a yard after losing control of the vehicle. Langston approached the Honda in his patrol vehicle and saw that the driver side door was already open. Langston, waiting for backup, sat parked twenty feet from the Honda in the middle of the road and observed a "light skinned" male around 5'9" in height with "a mini fro" haircut walk outside from the residence to the Honda to grab something before reentering the home. Langston identified that person as the defendant, Harold Walker Jr.

¶8. During Langston's testimony, evidence was presented of footage from a security camera located at a residence on Colonial Circle. The video was played before the jury. The two minute video revealed a green Chrysler Town and Country van being chased by the Honda. Immediately when the two cars were outside of the camera's frame, the audio from the recording revealed tires screeching followed by a rapid succession of gunshots and screams from apparent onlookers. The footage then revealed the Honda speeding back into the frame, traveling back the opposite direction with Langston's patrol vehicle following

4

closely in pursuit. According to Langston, at no point following the events depicted on the video did he lose sight of the Honda.

¶9. Mammie Barrett was a crime scene unit investigator for JPD on the night of January 12, 2020, who responded to the crime scene on Colonial Circle and Old Canton Road. She observed "a green colored van parked on the south side of Colonial Circle and several spent shell casings, north of that, in the roadway . . . ."

¶10. Barrett photographed nine .40-caliber spent shell casings intermixed with broken glass in the road. Barrett's photographs revealed damage to the front bumper on the passenger side of the van. Barrett photographed the deceased victim still sitting in the driver seat. The photographs revealed a significant amount of blood on the interior door panel of the driver side door. Barrett photographed the victim's multiple gunshot injuries suffered to his upper arm, cheek, and below his ear. Barrett also took multiple photographs while processing the green van back at the station. One of these photographs revealed white paint on the front bumper of the green van. Barrett photographed and recovered two .40-caliber projectiles from the green van.

¶11. Barrett also executed a search warrant on the Honda. Barrett took photographs of the damage to the driver side rear bumper of the Honda in which green paint is visible. Under the front passenger seat, Barrett photographed and recovered a holster for a hand gun. In the passenger door of the Honda, Barrett photographed and recovered an extended "loaded [.]40-caliber Glock pistol magazine."

¶12.    Terrance Jackson, a detective for JPD, also responded to the crime scene at Colonial Drive and Old Canton Road.  According to Jackson,

> When we arrived on scene, we were informed that a male had succumbed to his injuries inside the van.  We then processed the scene and learned, later on, that a white vehicle pulled along the side, a light-skinned black male, got out, fired multiple shots into the vehicle and then drove off in a white vehicle and then later crashed out, not too far from that location.

¶13.    Jackson went to speak with Ulnia Walker, who was registered as the owner of the Honda.  According to Jackson, Ulnia informed him that her son, Harold Walker Jr., had possession of the Honda that day.  During Jackson's conversation with Ulnia,

> [Walker] called and he spoke with his mother.  And at that time, we asked her not to—he was asking her over the phone, was the police there and we asked her not to inform him that we were there.  He kept asking who was there.  He was, kind of, limiting on what he was saying.  She kept asking him, what did he do.  And we continued to, kind of, converse back and forth and then . . . that's when he stated to her, if the police do come or if they ask, to tell them that the vehicle was stolen.

¶14.    Walker was taken into custody the next day.  Barrett was requested to photograph an injury on Walker's hand.  Her photographs revealed an injury to Walker's right hand "that was consistent with a slide mechanism" on a semi-automatic handgun, "cutting the top of his hand."  The photographs Barrett took of Walker also revealed that he was a young, slender, and light-skinned black male of average height with a "mini fro" hair cut.

¶15.    Walker agreed to speak with Jackson and signed a form waiving his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).  Walker then provided a video and audio recorded statement.  That video was played in front of the jury.

¶16. In his statement, Walker admitted to the phone conversation that he had with his mother. Walker then provided Jackson multiple different accounts of that evening throughout his interview. According to Jackson, "[Walker] stated first, that he was backing out and a car hit him and I think most of the statements he related that he had been hit from behind by another vehicle."

¶17. Walker initially asserted that he was not at the intersection of Old Canton Road and Colonial Circle that night, but a car had hit him, causing him to wreck by the home of the mother of his child, which was located on the corner of Adkins Boulevard and Concord Drive. When shown that this could not be true, Walker revised his story to reflect that he had actually been hit from behind and wrecked in a ditch at the intersection of Old Canton Road and Colonial Circle. According to Walker, at the same time he wrecked, he witnessed another white Honda Accord block the van. The driver of *that* Honda then shot the driver of the van.

¶18. Later in the interview, Walker changed his story again, informing officers that he rode as a passenger with "DeAnthony Jacobs," who had driven his mother's Honda that night and that this "Jacobs" had wrecked and shot into the van without any forewarning to Walker. Jackson ran the name through their background check system in addition to checking several social media outlets but was unable to confirm the existence of a "DeAnthony Jacobs" described by Walker.

¶19. Walker related that he had met Jacobs while attending Tougaloo College, but he did not have a phone number or any contact information for Jacobs, as Walker only met up with

him at "the spot where they sell weed." Walker failed to provide any address or any description of that location. When Jackson asked Walker to explain the injury to his right hand, at first Walker stated that he received it cutting an apple; later in the interview, however, Walker related that he received the cut while jumping a fence.

¶20. Pam England was the Registar for Tougaloo College, i.e., the custodian of all student academic records, who was asked to provide information as to Walker and "DeAnthony Jacobs." England's records showed that Walker attended the college sporadically from 2014 until 2017. As to Jacobs, however, England related that "[b]ased upon the name that was provided to me, I was not able to locate a record on a DeAnthony Jacobs."

¶21. After the State rested its case-in-chief, Walker moved for a directed verdict, contending that no evidence had been presented identifying him as the shooter. The trial court denied the motion. The jury found Walker guilty of first degree murder as to count one, guilty of shooting into a vehicle as to count two, and guilty of failing to stop for law enforcement as to count three. Walker moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial. The trial judge denied that motion as well.

**DISCUSSION**

I. **Whether the trial court erred by refusing Walker's proposed lesser-included-offense jury instruction as to heat of passion manslaughter.**

¶22. "Whether a defendant is entitled to a lesser-included-offense instruction is a question of law." *Chisholm v. State*, 365 So. 3d 229, 241 (Miss. 2023). Accordingly, this Court reviews such a denial de novo. *Sharkey v. State*, 265 So. 3d 151, 157 (Miss. 2019) (citing

8

***Downs v. State***, 962 So. 2d 1255, 1258 (Miss. 2007)). "A party is entitled to a lesser-included-offense instruction only if there is 'an evidentiary basis in the record' to support it." ***Chisholm***, 365 So. 3d at 241 (quoting ***Batiste v. State***, 121 So. 3d 808, 844 (Miss. 2013)). The Court has held that

> The trial court must grant a lesser-included-offense instruction unless the trial judge—and ultimately this Court—can say, considering the evidence and all reasonable inferences that can be drawn therefrom in the light most favorable to the accused, that no reasonable jury could find the defendant guilty of the lesser-included offense.

***Abeyta v. State***, 137 So. 3d 305, 310 (Miss. 2014) (citing ***Batiste***, 121 So. 3d at 844).

¶23. Proposed instruction D-1 read, in part, that

> If you fail to find the defendant guilty of the crime of murder, then you should continue your deliberations to consider the elements of the lesser crime of manslaughter
>
> . . . .
>
> If you find from the credible evidence in this case beyond a reasonable doubt that the Bryant Robinson was a living person and that the Harold Walker, Jr. Killed him in a cruel or unusual manner, without malice, but in the heat of passion, not necessarily in self-defense, and without authority of law, then you shall find the defendant guilty of manslaughter.

¶24. Proposed instruction D-2 read:

> Heat of Passion is defined as a state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment, or terror.

¶25. Under Mississippi Code Section 97-3-35 (Rev. 2020), heat-of-passion manslaughter is defined as "[t]he killing of a human being, without malice, in the heat of passion, but in

9

a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense . . . ." Miss. Code Ann. § 97-3-35 (Rev. 2020). This Court has defined "heat of passion" as

> [a] state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time *by some immediate and reasonable provocation*, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.

*Batiste*, 121 So. 3d at 844 (emphasis added) (alteration in original) (quoting *McCune v. State*, 989 So. 2d 310, 319 (Miss. 2008)).

¶26. Surveillance footage was presented that showed the Honda chasing the green van and, immediately after both vehicles were outside of the camera's focus, gunshots were heard. Eyewitness evidence was presented revealing that the Honda abruptly swerved out of its lane of traffic to block the green van. Eyewitness evidence was presented revealing that the driver of the Honda then exited the vehicle and fired seven to ten gunshots into the van before fleeing the scene.

¶27. In Walker's statement to Jackson, Walker takes great pains to appear clueless as to any reason for anyone to have committed violence against Robinson. Walker expressed no prior knowledge of Robinson or any indication that the shooting resulted from road rage. Even when Walker created the fictitious "DeAnthony Jacobs" to implicate someone else in the shooting, he maintained that he had no knowledge as to any reason why "Jacobs" would want to kill Robinson. Accordingly, the record failed to reveal any provocation that would

10

provide an evidentiary basis for the trial judge to grant Walker's proposed lesser-included manslaughter instruction.

**II.      Whether the evidence was sufficient to support a conviction of first degree murder, or, in the alternative, whether the verdict was against the overwhelming weight of the evidence.**

¶28.    The Court reviews whether the evidence is sufficient to sustain a conviction de novo. *Green v. State*, 269 So. 3d 75, 79 (Miss. 2018) (citing *Brooks v. State*, 203 So. 3d 1134, 1137 (Miss. 2016)).  In reviewing whether the evidence is sufficient to sustain a verdict, we view the evidence in the light most favorable to the prosecution.  *Swanagan v. State*, 229 So. 3d 698, 703 (Miss. 2017) (quoting *Fagan v. State*, 171 So. 3d 496, 503 (Miss. 2015)).  In doing so, we determine whether the evidence presented was sufficient for a rational juror to find each essential element of the crime beyond a reasonable doubt. *Id.* (quoting *Fagan*, 171 So. 3d at 503).

¶29.    We review a trial judge's decision to deny a motion for new trial for an abuse of discretion. *Owens v. State*, 383 So. 3d 305, 309 (Miss. 2024) (citing *Little v. State*, 233 So. 3d 288, 292 (Miss. 2017)).  In carrying out our review, "we weigh the evidence in the light most favorable to the verdict, 'only disturb[ing] a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'"  *Little*, 233 So. 3d at 292 (Miss. 2017) (alteration in original) (internal quotation marks omitted) (quoting *Lindsey v. State*, 212 So. 3d 44, 45 (Miss. 2017)).

¶30. Walker contends that because "no one saw Walker do the shooting[,]" the State failed to present sufficient evidence to prove that he was guilty of first degree murder beyond a reasonable doubt. Under Mississippi Code Section 97-3-19(1)(a) (Rev. 2020), "[t]he killing of a human being without the authority of law by any means or in any manner shall be murder . . . [w]hen done with deliberate design to effect the death of the person killed, or of any human being, shall be first-degree murder . . . ." Miss. Code Ann. § 97-3-19(1)(a) (Rev. 2020).

¶31. Walker's contention lacks merit. "The jury is allowed 'to draw reasonable inferences from facts based on experience and common sense.'" *Scott v. State*, 220 So. 3d 957, 963 (Miss. 2017) (quoting *Howell v. State*, 860 So. 2d 704, 739 (Miss. 2003)). Evidence was presented that the Honda abruptly swerved and blocked a green van on the intersection of Colonial Drive and Old Canton Road. Evidence was presented that a slender, younger black male exited the Honda from the *driver side* door and fired multiple rounds into the van. Evidence was presented that the shooter re-entered the driver side door of the Honda before fleeing. Each eyewitness account observed only one person inside the Honda and said that this person was the shooter.

¶32. Evidence was presented that the pursuing JPD officer never lost sight of the Honda as it fled. Evidence was presented that the officer pursued the Honda until it wrecked in front of the house of Walker's child's mother. The officer observed that the driver side door of the Honda was open. Evidence was presented that a light-skinned black male around 5'9" in height with a "mini fro" haircut returned to the Honda before going back inside the

12

residence of Walker's child's mother. Evidence of photographs taken after Walker was in custody revealed that he was light-skinned black male, average in height, slender, and that he indeed had a "mini fro" haircut.

¶33. Evidence was presented that Walker's mother owned the Honda that fled the crime scene and wrecked in front of the home of Walker's child's mother. Evidence was presented that Ulnia had let Walker borrow the Honda that day. Evidence was presented that while officers spoke with Ulnia inside her home, Walker called and told her to report the Honda stolen. Evidence was presented that the projectiles that struck Robinson and his van were .40-caliber bullets. Evidence was presented of a magazine containing .40-caliber bullets were recovered from the Honda. Evidence was presented revealing white paint on the damaged front bumper of the van and green paint on the damaged rear bumper of the Honda. Evidence was presented of an injury to Walker's right hand that was consistent with an injury made by a slide mechanism on a semi-automatic handgun. Evidence was presented of Walker's recorded statement in which he contradicted himself and altered his story numerous times throughout the entirety of the interview.

¶34. Accordingly, viewing all inferences in favor of the prosecution, the evidence presented was sufficient for a reasonable juror to find based on common sense and lived experience that Walker was guilty of murdering Robinson beyond a reasonable doubt. Moreover, although Walker failed to argue in his brief exactly how the jury's verdict was contrary to the overwhelming weight of the evidence, as discussed above, ample evidence

13

was presented that supported a finding of guilt. As such, the trial court did not abuse its discretion by denying Walker's motion for a new trial.

### III. Whether the trial court committed plain error by failing to exclude the portion of Walker's statement in which he stated that he met up with Jacobs at the weed spot.

¶35. During Walker's recorded statement, he informed officers that he could not provide information on the whereabouts of Jacobs as he just knew him from "the spot where they sell weed." Counsel for Walker made no objection at trial to the inclusion of that statement in the video that was played in front of the jury. Walker now contends for the first time on appeal that the trial judge erred under Mississippi Rule of Evidence 404(b) by allowing the jury to hear this portion of Walker's statement.

¶36. "Generally, a party who fails to make a contemporaneous objection at trial must rely on plain error to raise the issue on appeal, because otherwise it is procedurally barred." *Parker v. State*, 30 So. 3d 1222, 1227 (Miss. 2010) (citing *Walker v. State*, 913 So. 2d 198, 216 (Miss. 2005)). "For the plain-error doctrine to apply, there must have been 'an error that resulted in a manifest miscarriage of justice' or 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Hall v. State*, 201 So. 3d 424, 428 (Miss. 2016) (alteration in original) (quoting *Brown v. State*, 995 So. 2d 698, 703 (Miss. 2008)). "To determine if plain error has occurred, this Court must determine 'if the trial court has deviated from a legal rule, whether that error is plain, clear[,] or obvious, and whether that error has prejudiced the outcome of the trial.'" *Conner v. State*, 138 So. 3d 143, 151 (Miss.

2014) (alteration in original) (internal quotation marks omitted) (quoting *Grayer v. State*, 120 So. 3d 964, 969 (Miss. 2013)).

¶37. Under Mississippi Rule of Evidence 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Miss. R. Evid. 404(b)(1). Notwithstanding, under Mississippi Rule of Evidence 404(b)(2), "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Miss. R. Evid. 404(b)(2).

¶38. This Court has long held that "the State has a 'legitimate interest in telling a rational and coherent story of what happened . . . .'" *Brown v. State*, 483 So. 2d 328, 330 (Miss. 1986) (quoting *Turner v. State*, 478 So. 2d 300, 301 (Miss. 1985)). And "[w]here substantially necessary to present to the jury 'the complete story of the crime' evidence or testimony may be given even though it may reveal or suggest other crimes." *Id.* (quoting *State v. Villavicencio*, 95 Ariz. 199, 201, 388 P.2d 245 (1964)); *see also Davis v. State*, 40 So. 3d 525, 530 (Miss. 2010).

¶39. Notwithstanding the procedural bar, Walker's contention lacks merit. The prosecution used Walker's statement to tell a rational and coherent story of what happened, not to show that Walker had a propensity to use drugs. Walker's testimony introduced a fictitious "DeAnthony Jacobs" to argue that someone else had been the shooter. Walker's entire statement was used to discredit his multiple different stories, and he failed to provide any credible information to law enforcement throughout the entire video recorded interview.

15

Further, this particular portion of Walker's statement was used in furtherance of showing that Walker failed to provide any verifiable information as to the whereabouts of Jacobs or how law enforcement could contact him. Accordingly, the trial judge did not commit plain error by failing to exclude this portion of Walker's statement.

> **IV.** **Whether the trial court erred by failing to ensure that the court reporter transcribed the jury instructions conference and a jury voir dire bench conference.**

¶40. At trial, before considering any proposed jury instructions submitted by the parties, the trial judge expressed that

> I'd like to go over the Jury Instructions this afternoon and any objections you have of the Jury Instructions, we will dictate them into the record tomorrow morning. I used to take down the Jury Instructions argument and the Supreme Court got on me about it saying I was wasting time and money, why am I putting all that in the record, so I don't do that anymore. So, I can't remember the case, but I remember who wrote it. So, we are going to go over the Jury Instructions. We'll put all of the objections down and we'll dictate those in the record tomorrow and then we can submit the case to the Jury . . . .

Neither defense counsel nor the prosecution objected to this impromptu procedure announced by the trial judge. The transcript picked back up the next morning. Neither the State, defense counsel, nor the trial judge dictated any objections to any of the proposed jury instructions into the record.

¶41. On appeal, Walker moved to supplement the record and suspend the briefing schedule, contending that

> In working on the Appellant's brief, undersigned counsel (who did not represent Walker at trial) has discovered that the jury instruction conference was not transcribed. The record contains only the instructions as filed by the parties (and they are not annotated as to whether given or refused) and a transcription of the court reading the instructions after the instruction

16

conference. This is important because the clerk's papers show that the defense requested a heat of passion manslaughter instruction. The jury is not instructed on manslaughter but there is nothing to demonstrate what happened between the filing of the instruction and the omission of it in the instructions read to the jury.

Motion to Supplement Record and Suspend Briefing Schedule, *Walker v. State*, No. 2023-KA-01153-SCT (Miss. Aug. 5, 2024). This Court entered an order granting thirty days for the trial clerk to supplement the record. Order, *Walker v. State*, No. 2023-KA-01153-SCT (Miss. Sept. 5, 2024). One month later, the trial clerk supplemented the record by producing the jury instructions that had been annotated "given." No proposed jury instruction was supplemented with the annotation "refused" or "withdrawn."

¶42. A review of the supplemental record reveals that the trial judge granted the State's proposed jury instructions S-2, S-3, S-4, S-5, S-6, S-9, S-10, S-14, S-15, and S-16. A review of the supplemental record also reveals that the trial judge granted the defense's proposed jury instructions D-5, D-6, D-7, and D-8. The trial judge either denied the State's proposed jury instructions S-1, S-7, S-8, S-11, S-12, and S-13, or they were withdrawn. The same is true regarding the defense's proposed jury instructions D-1, D-2, D-3, and D-4. Clearly, both sides made several objections during the jury instructions conference, and the trial judge made several rulings on those objections.

¶43. Under Rule 20 of the Mississippi Rules of Criminal Procedure,

> In *all* felony cases, the court reporter *shall* make a record of the *voir dire* and selection of the jury, opening statements, bench and in-chambers conferences, and closing arguments, *whether or not such is ordered by the judge or requested by either party*. In death-penalty cases, this duty may not be abrogated by the judge or waived by the defendant, and is in addition to all other duties.

Miss. R. Crim. P. 20 (emphasis added) (emphasis added).  This Court has directed that it is the trial judge's responsibility to enforce this directive.  **Suan v. State**, 511 So. 2d 144, 147 (Miss. 1987).

¶44.    On too many occasions, "[w]e have admonished trial courts to ensure that every word is transcribed . . . ." **Davis v. State**, 684 So. 2d 643, 651 (Miss. 1996).  "[T]he law absolutely obligates the court reporter to take down notes of *all* proceedings at trial . . . ." **Doby v. State**, 557 So. 2d 533, 536 n.2. (Miss. 1990).  "We have repeatedly over the years admonished that our court reporters take down and have available for reproduction in transcribed form for use on appeal *all* proceedings at trial, *period*." **Lambert v. State**, 574 So. 2d 573, 577 (Miss. 1990) (emphasis added) (citing **Doby**, 557 So. 2d at 536 n.2).

¶45.    It is also true, however, that "it is the duty of the appellant to present a record of the trial sufficient to show that the error of which he complains on appeal has occurred and, further, that the error was timely and properly preserved." **Doby**, 557 So. 2d at 536 n.2. Under Mississippi Rule of Appellate Procedure 10(c), "[i]f no . . . transcript of all or part of the . . . proceedings is available, the appellant may prepare a statement of the . . . proceedings from the best available means, including recollection." Miss. R. App. P. 10(c).  Walker failed to comply with Mississippi Rule of Appellate Procedure 10(c).  No statement of the missing jury instructions conference was prepared in today's case to complete the record.

¶46.    In **Simmons v. State**, the defendant likewise failed to follow the procedures set forth in Mississippi Rule of Appellate Procedure 10(c).  **Simmons v. State**, 805 So. 2d 452, 506 (Miss. 2001).  The Court held that "the failure to do so acts as a procedural bar to raising the

18

issue on appeal." ***Id.*** (citing ***Watts v. State***, 717 So. 2d 314, 317 (Miss. 1998)). Similarly, in ***Keller v. State***, the Court held that because "Keller never filed a statement of the evidence or proceedings from recollection[,]" therefore, "[h]e has failed to preserve the issue on appeal *for failure to object contemporaneously* and *failure to follow Rule 10(c)*." ***Keller v. State***, 138 So. 3d 817, 837 (Miss. 2014) (emphasis added).

¶47. Walker is procedurally barred from raising this issue. Defense counsel failed to contemporaneously object to the trial judge's decision to conduct the jury instructions conference off-record. "It is in poor grace for counsel to participate without objection in unrecorded bench conferences and complain for the first time on appeal." ***Thorson v. State***, 653 So. 2d 876, 895 (Miss. 1994). Walker further failed to comply with Mississippi Rule of Appellate Procedure 10(c) by not supplementing the record with a statement of recollection as to the missing portions of the proceedings.

¶48. Notwithstanding the procedural bar, we note that Walker now claims error resulting from the off-the-record jury instructions conference because the trial judge did not give his proposed heat of passion and manslaughter instruction. *See supra* ¶ 41. As previously addressed, the first issue raised on appeal by Walker was that the trial court erred by refusing his lesser-included-offense jury instruction for heat of passion manslaughter. *See supra* ¶¶ 1, 22-27. We found that our standard of review was de novo and, based on the evidence presented, that the trial court did not err by denying Walker's requested lesser-included-offense instruction. *See supra* ¶ 22. Walker, therefore, suffered no prejudice from the lack

of transcripts as "[t]he record is sufficient to analyze all of the issues and properly review the case." *Simmons*, 805 So. 2d at 506.

> **V.** **Whether Walker's trial counsel was ineffective by failing to insist that the entire trial was transcribed and by failing to object to Walker's statement that he met up with Jacobs at the weed spot under Mississippi Rule of Evidence 404(b).**

¶49. "In order to prevail on a claim of ineffective assistance of counsel, a defendant must prove that his attorney's performance was deficient, and that the deficiency was so substantial as to deprive the defendant of a fair trial." *Holly v. State*, 716 So. 2d 979, 989 (Miss. 1998) (citing *Strickland v. Washington*, 466 U.S. 668, 687–96, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Walker contends that his trial counsel was prejudicially deficient by failing to insist that the court reporter transcribe a voir dire bench conference and the jury instruction conference. Walker further contends that his trial counsel was ineffective for failing to object to the "weed spot" portion of his recorded statement.

¶50. As previously addressed, the use of Walker's "weed spot" statement was permissible. Accordingly, Walker's trial counsel was not deficient for failing to raise an objection that would most likely have been overruled. *See Wilcher v. State*, 863 So. 2d 719, 775 (Miss. 2003). Moreover, assuming that trial counsel's performance was deficient by failing to contemporaneously object to the trial judge's decision to conduct the jury instructions conference off-record, Walker fails to show that he was deprived of a fair trial as a result of the failure. Even in the absence of a transcript of the jury instructions conference, the record was sufficient for this Court to properly analyze whether the trial judge erred by denying Walker's proposed lesser-included offense instruction.

**CONCLUSION**

¶51.   Unfortunately, we must yet again instruct, as unambiguously and plainly as we possibly can, that in *all* felony cases, the entirety of the proceeding should be transcribed. Here, however, we find no reversible error, and we affirm.

¶52.   **AFFIRMED.**

**KING AND COLEMAN, P.JJ., MAXWELL, CHAMBERLIN, ISHEE, GRIFFIS, SULLIVAN AND BRANNING, JJ., CONCUR.**